**Jere MARTIN, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (RED ROSE TRANSIT AUTHORITY), Respondent.**

**Red Rose Transit Authority, Petitioner,**

v.

**Workers' Compensation Appeal Board (Martin), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 18, 2001.

Decided Aug. 31, 2001.

---

Norman Weinstein, Philadelphia, for petitioner.

Kirk L. Wolgemuth, Lancaster, for respondent, Red Rose Transit Authority.

Before PELLEGRINI, Judge, LEADBETTER, Judge, MIRARCHI, Jr., Senior Judge.

MIRARCHI, Senior Judge.

Jere Martin (Claimant) and Red Rose Transit Authority (Employer) have filed cross-petitions for review of an order of the Workers' Compensation Appeal Board (Board) affirming a decision of a workers' compensation judge (WCJ) that granted Claimant's claim petition for a closed period of time. We reverse in part and affirm in part.

Claimant was a transit bus driver for Employer since 1965, a job requiring physical demands on his shoulders, arms, elbows, and neck. On September 12, 1996, a car struck Claimant's bus. As a result of the accident, Claimant experienced pain in his right shoulder. His injuries were treated and he worked in a light-duty position with Employer for approximately four or five weeks. Claimant then returned to his normal duties. The pain from the work injury continued and increased, however, and on September 12, 1997 he stopped working because, as he later testified, his condition made him feel that he was "not safe to be on the road." WCJ's Finding of Fact No. 5.

Claimant also had been treating for diabetes since 1989, keeping the disease under control with diet and medication. On October 23, 1997, however, Claimant became insulin dependent as a result of the disease. Federal regulations, introduced by Employer at the hearing, prohibit an individual who is insulin dependent from driving a bus.[1]

1. *See* Motor Carrier Safety Regulations, 49 C.F.R. § 391.41.

Claimant filed a claim for benefits. Employer acknowledged that Claimant had suffered a work injury, but denied that Claimant had become disabled from the work injury. A hearing was held before the WCJ at which Claimant testified and introduced the deposition testimony of his treating physician, Timothy P. Tymon, M.D., a board-certified orthopedic surgeon. Employer introduced the deposition testimony of Cheryl Opalack, D.O., also a board-certified orthopedic surgeon.

Claimant testified that he is presently unable to drive and must rely on friends and family for transportation. He further testified that he has trouble lifting even small items without experiencing a stabbing pain in his shoulder and finds personal hygiene a challenge to maintain. The WCJ found this testimony, and that regarding the details of the accident, to be credible.

Dr. Tymon testified that he first treated Claimant following an earlier work injury as a bus driver for Employer in 1994. He began treating Claimant again for the 1996–work accident in December 1997. On examination, Claimant showed limited flexion in his right shoulder to only 90 degrees, abduction in his right shoulder to 90 degrees, and limited rotation of the shoulder. An x-ray revealed degenerative changes to the acromioclavicular joint, and an MRI showed mild changes to the rotator cuff. Dr. Tymon diagnosed Claimant as suffering from adhesive capsulitis of the right shoulder, which condition was "triggered by" the September 12, 1996 work accident. WCJ's Finding of Fact No. 13. Dr. Tymon further testified that Claimant was unable to perform his duties as a bus driver because of the condition of his shoulder when he last examined him in January 1998 and that the work injury was a substantial contributing factor to Claim-

ant's disability. Dr. Tymon's Deposition, pp. 12–13.

Dr. Tymon also testified that Claimant is suffering from non-work-related diabetic neuropathy, a condition that can cause numbness and tingling in the extremities. He further opined that Claimant's diabetes was also a cause, in addition to the work injury, of his adhesive capsulitis. The WCJ found Dr. Tymon's diagnosis of adhesive capsulitis to be credible, as well as his testimony that the work injury was a substantial cause of this condition.

Dr. Opalack testified that she examined Claimant on September 13, 1996 and again on October 28, 1996. She also diagnosed an adhesive capsulitis but related it solely to Claimant's diabetes and diabetic neuropathy. The WCJ accepted as credible Dr. Opalack's opinion that Claimant suffered an adhesive capsulitis, but rejected as not credible her opinion that this condition was related solely to Claimant's diabetes and diabetic neuropathy.

Based on his findings, the WCJ concluded that Claimant became disabled as a result of the September 12, 1996 work accident. The WCJ further concluded, however, that the disability ended on October 23, 1997 when Claimant became insulin dependent. Accordingly, the WCJ ordered the payment of disability benefits for a closed period of time, which benefits were suspended on October 23, 1997. The WCJ also ordered that Employer pay all reasonable and necessary medical expenses related to Claimant's adhesive capsulitis. The Board affirmed, and this petition for review followed.

■ This Court's scope of review is limited to determining whether the WCJ's necessary findings of fact are supported by substantial evidence or whether an error of law or a constitutional violation occurred. *ABF Freight Systems, Inc. v. Workers' Compensation Appeal Board* *(Iten)*, 744 A.2d 348 (Pa.Cmwlth.2000). The WCJ is the sole arbiter of fact, evidentiary weight, and credibility and may accept or reject the testimony of any witness in whole or in part. *Id.*

Claimant argues that the WCJ erred by suspending benefits when there was no evidence introduced that his work-related injury had healed or subsided to the point that he could return to work. Employer argues that (1) the WCJ erred by concluding that Claimant's adhesive capsulitis is related to the work injury when Dr. Tymon's testimony on this matter was allegedly incompetent or equivocal, and (2) the WCJ erred by ordering the payment of Claimant's medical bills when there was allegedly no evidence that such bills were for treatment that was reasonable, necessary, or causally-related to the work injury. We will address Employer's arguments first.

### Employer's Arguments

Employer first argues that Dr. Tymon's testimony is equivocal on the issue of the work-related cause of Claimant's disability. Employer contends that the doctor's statement that the work injury "triggered" Claimant's adhesive capsulitis is equivocal and is made more so by the Doctor's July 1998 report that states in part: "It is also my opinion that, based on review of the records, that the accident in September seemed to trigger his current problem." Employer contends that this statement is equivalent to a conclusion that the injury merely "could have been" the cause of Claimant's condition.

■ First, we note that we do not view the word "triggered," at least in the context presented, to be an equivocal expression of medical cause. "Trigger" has been defined in relevant part as "a stimulus that initiates a physiological or pathological

process." Webster's New Collegiate Dictionary 1239 (1981). Thus, the doctor's phrase "triggered by" in this context is the equivalent of "caused by."

■ Second, Employer ignores the well-established principle that medical testimony and evidence must be viewed as a whole, not as isolated expressions. *Terek v. Workmen's Compensation Appeal Board (Somerset Welding & Steel, Inc.)*, 542 Pa. 453, 668 A.2d 131 (1995). Not every utterance coming from a medical witness on a medical subject must be certain, positive, and without any reservation. *Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas)*, 77 Pa.Cmwlth.202, 465 A.2d 132 (1983). "Medical evidence is unequivocal if the medical expert, after providing a foundation, testifies that in his [or her] medical opinion he [or she] thinks the facts exist." *ARMCO v. Workmen's Compensation Appeal Board (Carrodus)*, 139 Pa.Cmwlth. 326, 590 A.2d 827, 829, *petition for allowance of appeal denied*, 529 Pa. 636, 600 A.2d 955 (1991). Moreover, the WCJ is the sole arbiter of the credibility of testimony and other evidence, and he or she is free to reject or accept the testimony of any witness, including medical witnesses, in whole or in part. *Broughton v. Workers' Compensation Appeal Board (Disposal Corp. of America)*, 709 A.2d 443 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 556 Pa. 680, 727 A.2d 133 (1998).

■ Here, Dr. Tymon not only unequivocally testified that the work accident "triggered," *i.e.*, initiated or caused, Claimant's adhesive capsulitis, but he also testified that the work accident was a substantial contributing cause of Claimant's disability. The WCJ found this testimony to be credible, and thus that finding is conclusive. Moreover, the sentence that Employer highlights in Dr. Tymon's report is not of such character that it casts doubt on the clear testimony he gave in his deposition. We need only further note that it is axiomatic that an employer is liable for an employee's disability when that disability is caused by a combination of work-related and non-work-related factors, so long as the work-related cause is a substantial contributing factor to the disability. *C & K Coal Co. v. Workmen's Compensation Appeal Board (Crissman)*, 131 Pa.Cmwlth. 1, 569 A.2d 384 (1990).

■ Employer next argues, without citation to authority, that the WCJ erred by awarding medical benefits to Claimant when the bills submitted by Claimant were allegedly not reasonable, necessary, or causally related to the work injury. Disputes regarding the reasonableness or necessity of treatment, however, must be resolved through the utilization review process under Section 306(f.1)(6) of the Workers' Compensation Act (Act).[2] For this reason, the WCJ generally lacks subject matter jurisdiction over the issue of the reasonableness or necessity of treatment. *Zuver v. Workers' Compensation Appeal Board (Browning Ferris Industries of PA, Inc.)*, 755 A.2d 112 (Pa. Cmwlth.2000). Indeed, once it is determined that an employer is liable for an injury under the Act, the employer is required to pay such bills within thirty days of receipt.[3] *Topps Chewing Gum v. Workers' Compensation Appeal Board (Wickizer)*, 710 A.2d 1256 (Pa.Cmwlth.1998). If the employer challenges such bills, it must proceed in accordance with the utilization review provisions of the Act, during which the burden remains with the employer.

---

**2.** Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 531(6).

**3.** Moreover, Employer *admitted* that Claimant sustained a work-related injury.

*Id.* Employer's arguments, therefore, are without merit.

### Claimant's Argument

On his cross-petition for review, Claimant argues that the WCJ erred by suspending his disability benefits as of the date he became insulin dependent, particularly in view of the fact that there was no finding by the WCJ that Claimant's work-related injury had resolved or improved. We agree.

■ A claimant has the burden of proving a continuing disability throughout the pendency of the claim petition. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993); *Innovative Spaces v. Workmen's Compensation Appeal Board (DeAngelis)*, 166 Pa.Cmwlth.141, 646 A.2d 51 (1994), *petition for allowance of appeal denied*, 541 Pa. 645, 663 A.2d 696 (1995). The WCJ and the Board applied this principle in determining that Claimant's disability benefits should be suspended as of the date he was rendered unfit to drive a bus, pursuant to federal regulations, because of his insulin dependency. The WCJ apparently reached the conclusion that if Claimant could no longer drive a bus as of October 23, 1997, then his disability was attributable to this non-work-related factor, not the work injury. This conclusion, however, is both logically faulty and unsupported by case law.

■ "Disability," as contemplated by the Act, is the equivalent to a loss of earning power. *City of Philadelphia v.*

*Workmen's Compensation Appeal Board (Defruscio)*, 695 A.2d 910 (Pa.Cmwlth. 1997). At the hearing, Employer presented the testimony of its medical witness and introduced, among other documents, the aforesaid federal regulations. The federal regulations had the effect of proving only that Claimant could not drive a bus while he was insulin dependent. They did not, however, prove that Claimant would automatically suffer a loss in wages as a result or that Claimant was incapable of performing any other work because of his insulin dependency. Further, there was no evidence introduced that Claimant was terminated because of his insulin dependency.[4]

■ Following the 1997–work accident, Claimant worked in a light-duty office position with Employer for four to five weeks. There is nothing in the record to indicate that this or a similar position would be unavailable to him with Employer.[5] In fact, Employer's medical witness testified that Claimant was capable of performing a customer service representative position with Employer, assuming that such a position would be available.[6] Dr. Opalack's Deposition, pp. 36–37. Thus, there is nothing in the record to indicate that insulin dependency interferes with any other type of employment aside from bus driving, and no basis to equate the federal regulations with a loss of wages. Accordingly, the record does not support the WCJ's conclusion that Claimant became "disabled," as defined by the Act, when he became insulin dependent.

---

**4.** Indeed, Claimant testified that he still considered himself employed by Employer as he is still receiving health insurance benefits through Employer. Notes of Testimony, pp. 52–53.

**5.** Indeed, Section 306(b) of the Act, 77 P.S. § 512, provides that for claimants who have a

partial disability, if an employer has a specific job vacancy within the claimant's restrictions, the employer must offer that job to the employee.

**6.** There is no evidence, however, that such a position was offered to Claimant.

 Further, even if Claimant's insulin dependency would result in Claimant losing his job with Employer, there is no finding that the total disability caused by the work injury has resolved, and thus there is no basis that it should not be compensated. A suspension of benefits is only appropriate where the claimant's earning power is no longer affected by the work-related injury. *Vista International Hotel v. Workmen's Compensation Appeal Board (Daniels)*, 560 Pa. 12, 742 A.2d 649 (1999). A claimant's subsequent involuntary loss of employment does not automatically result, if at all, in the conclusion that his or her earning power is no longer affected by the work injury. *Id.* An employer is not absolved from liability for a terminated employee unless the employer establishes a basis for a suspension (or termination) of benefits. *Id.* This is true even though the matter is before the WCJ on a claim petition rather than the employer's formal suspension petition. *Id.*

 Once a claimant establishes an ongoing loss of earning capacity because of a work-related injury, the burden will shift to the employer to show that benefits should be suspended for a non-work-related cause even though the proceeding is before the WCJ on the claim petition. *Id.* Here, Claimant established an ongoing work-related total disability in that he proved that his disability continued throughout the claim proceedings without abatement or resolution. The WCJ truncated the period of disability, however, on the erroneous determination that Claimant's insulin dependency constituted a superseding cause of disability. Because Claimant proved an ongoing work-related disability throughout the claim petition

proceedings, the burden was on Employer to show that Claimant's benefits should be suspended for a non-work-related cause. The introduction of the federal regulations simply did not satisfy this burden.

 It bears noting that the present case is very different from *Inglis House* where the claimant's loss of earnings capacity was, following a period of work-related disability, attributable to a voluntary decision by the claimant to retire from the work force. Thus, the WCJ's and Board's application of *Inglis House* to the present case is over-broad. *See Vista.* Further, this case is distinguishable from *Schneider, Inc. v. Workers' Compensation Appeal Board (Bey)*, 560 Pa. 608, 747 A.2d 845 (2000). There, the Supreme Court held that an employer, seeking a suspension of benefits on the grounds that the claimant's work-related injury had resolved to the point that he could have performed light-duty work, need not prove work availability where the claimant had also suffered a non-work-related brain injury that rendered him incapable of all possible work activity.[7] Here, there is simply no evidence that Claimant's loss of earnings capacity was the result of a voluntary abandonment of his employment or a non-work-related condition that rendered him incapable of any work activity. On the contrary, the record shows only that Claimant's loss of earnings capacity was the direct result of the work injury. Therefore, the WCJ erred by suspending Claimant's disability benefits on the date that he became insulin dependent.

Employer argues that, notwithstanding the issue of insulin dependency, the record supports an award of a closed period of benefits based on the testimony of Dr.

---

7. It should be noted that the employer in *Schneider* based its suspension petition on the fact that Claimant's work injury had resolved to the point that the claimant could perform light-duty work. Here, of course, there is no finding that Claimant's work injury had resolved in any way.

Tymon. Dr. Tymon had testified that as of his last examination he did not believe that Claimant was capable of returning to his position driving a bus because of the limitations in the motion of Claimant's shoulder, and that a functional capacity evaluation would be a useful gauge for determining whether Claimant would be presently able to return to that kind of work. Dr. Tymon's Deposition, pp. 11–12. This argument completely ignores, however, the fact that the WCJ found, based at least in part on Claimant's credible testimony, that Claimant is not presently capable of driving *any* vehicle because of his work-related injury. *See* WCJ's Findings of Fact Nos. 6 and 8.

In *Ricks v. Workers' Compensation Appeal Board (Parkway Corp.)*, 704 A.2d 716 (Pa.Cmwlth.1997), we determined that the WCJ is free to determine the chronological length of a claimant's disability, based not only upon the testimony of the claimant's medical witness but also upon the testimony of the claimant as well. In *Ricks*, the claimant's medical witness released the claimant to full duty on April 1, 1993 after treating her for a June 12, 1992 work injury. The employer argued before us that the WCJ erred by awarding disability benefits to the claimant after April 1, 1993. We rejected the employer's argument, stating:

> However, evidence of Dr. Ruth's release of Claimant to full duty on April 1, 1993, despite her continuing residual problems, is not the only evidence of record on this point. Claimant's testimony about her attempt to return to her pre-injury job after receiving the return to work notice was also before the WCJ and it is this testimony believed by the WCJ that supports the conclusion that Claimant carried her burden of proving that her disability continued beyond April 1, 1993.

*Id.* at 719. Here, Claimant proved that he is not presently able to drive. Therefore, Employer's argument is without merit.

For the foregoing reasons, we reverse the Board's order insofar as it affirms the WCJ's suspension of Claimant's disability benefits. In all other respects, however, the order is affirmed.

### ORDER

AND NOW, this 31st day of August, 2001, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby reversed in part and affirmed in part. The order is reversed insofar as it affirms the order of the workers' compensation judge (WCJ) suspending the Petitioner's workers' compensation benefits as of October 23, 1997, and such benefits are hereby awarded on an ongoing basis. The order is affirmed in all other respects.