# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joshua A. Snyder,                                     :
                          Petitioner                  :
                                                      :
          v.                                          : No. 1193 C.D. 2015
                                                      : Submitted: December 18, 2015
Workers' Compensation Appeal                          :
Board (Kriner, d/b/a Kriner's Quality                 :
Roofing and Uninsured Employers                       :
Guaranty Fund),                                       :
                          Respondents                 :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE MARY HANNAH LEAVITT, Judge[1]
            HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE LEAVITT                                    FILED: March 10, 2016

          Joshua A. Snyder (Claimant) petitions for review of the adjudication
of the Workers' Compensation Appeal Board (Board) affirming the Workers'
Compensation Judge's (WCJ) award of benefits for a closed period of time and,
thereafter, suspending benefits.  Claimant's employer, Shawn Kriner, d/b/a
Kriner's Quality Roofing (Employer) was uninsured, which made the Uninsured
Employers Guaranty Fund (Guaranty Fund) liable for Claimant's compensation
benefits if not paid by Employer.  Claimant contends that the Board erred in
suspending his compensation benefits and in holding that the Guaranty Fund's

_____

[1] This case was assigned to the opinion writer before January 4, 2016, when Judge Leavitt
became President Judge.

liability was secondary to Employer's liability. We affirm in part, vacate in part and remand.

Claimant began working for Employer on September 4, 2010, earning $150 per day as a roofer. On September 7, 2010, Claimant fell from a roof, sustaining bilateral heel injuries. On February 13, 2013, Claimant notified the Guaranty Fund of his September 7, 2010, injury, and on March 8, 2013, Claimant filed a claim petition pursuant to Section 1603(d) of the Workers' Compensation Act (Act)[2] against the Guaranty Fund and Employer. The claim petition alleged that the fall from the roof left Claimant unable to do his pre-injury work as a roofer. Employer and the Guaranty Fund filed answers denying the allegations in the petition.[3] At the proceeding before the WCJ, all parties presented evidence.

Claimant testified that on September 7, 2010, he slipped on the roof of a home where he was working and fell about 14 feet, landing on the heels of both feet. Employer took him to the hospital; he underwent surgery on October 1, 2010, for his work injury. Two months later, his surgeon, James A. Oliverio, M.D., released him from further treatment. However, Claimant was not medically cleared to return to his roofing job.

In September 2011, Claimant began working for Nitterhouse Concrete, filling air bubbles in concrete with a sponge. After six weeks, he was terminated for absenteeism; Claimant attributed these absences to his foot pain. In

_____

[2] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §2703(d), added by the Act of November 9, 2006, P.L. 1362.

[3] In addition to challenging the extent of Claimant's work injury, Employer argued that Claimant was an independent contractor and the Guaranty Fund claimed it did not receive notice within the statutorily prescribed time period. The WCJ found that Claimant was not an independent contractor and that his notice to the Guaranty Fund was timely. Neither Employer nor the Guaranty Fund appealed to the Board.

April 2012, Claimant began doing construction work at Cornerstone Construction but left in August 2012 for two reasons: foot pain and a recent diagnosis of Hepatitis C. In late 2012, he worked about one week at a temporary position with Joh Rock Construction, setting posts for pole barns.

In early 2013, upon advice of his attorney, Claimant applied for Social Security disability because of the Hepatitis C diagnosis. At the WCJ hearing of April 23, 2013, Claimant stated that his Social Security application was pending and explained that he was unable to work in any capacity because of the treatments for his Hepatitis C.

At the January 14, 2014, hearing before the WCJ, Claimant stated that his Social Security application had been denied because of his successful Hepatitis C treatment. WCJ Hearing, 1/14/14, at 38, 50; Reproduced Record at 210a, 222a (R.R. ___). In October 2013, Claimant began employment with MSC Contracting, doing flooring and window trim work. Because the work caused significant foot pain, he left that employment in December 2013. Employer has never offered him work.

Claimant testified that he continues to have pain in both feet, which he controls with over-the-counter pain medication. He occasionally takes more potent pain medication. Dr. Oliverio had ordered physical therapy, but Claimant quit after three sessions due to the cost. Claimant's family doctor urged him to seek pain management treatment, but he has not done so because he does not have health insurance.

Claimant presented the testimony of Robert Richards, M.D., board certified in orthopedic surgery. Dr. Richards examined Claimant on October 14, 2013, and conducted a review of Claimant's medical records. He found that

Claimant's work injury resulted in fractures of the calcaneus, or heel bone, of both feet; the heel bone is the largest of the tarsal bones. The left foot fracture required surgery. Claimant's medical records established that both fractures had healed in suitable positions and that the plate and screws in the left foot remained intact.

Dr. Richards opined that the right foot fracture had healed and Claimant was fully recovered from that injury as of the time of his examination. However, the left heel fracture had caused subtalar joint arthritis, which limited the foot's range of motion causing pain whenever Claimant walked on an uneven surface. The arthritis also limited the amount of time Claimant could walk or stand without pain, constraining him to sedentary work. Claimant could not return to full-time work as a roofer. Further, Dr. Richards believed that Claimant's attempts to return to work had been unsuccessful because the jobs required too much walking and standing. This accounted for Claimant's increased left foot pain and absences from work.

Shawn Kriner, Employer, testified that his business has been in operation for approximately five years and does not have a workers' compensation insurance policy to cover his roofers because they are independent contractors.[4] Kriner testified that he paid Claimant $150 per day, in cash. He was present when Claimant fell and did not contest the injuries Claimant sustained in the fall. Kriner stated he currently has light-duty work available for Claimant.

The Guaranty Fund presented the testimony of Joseph Cooper, the president of Cornerstone Construction, where Claimant worked from April to

---

[4] The WCJ rejected Employer's assertion that Claimant was an independent contractor, and that holding has not been appealed. Accordingly, we do not discuss the evidence presented in support of Employer's assertion that Claimant was not an employee.

August of 2012 as a carpenter, cutting boards and building frames. In August, Cooper reduced Claimant's hours for lack of work. Cooper recalled Claimant's "health issues" caused him to stop reporting for work. WCJ Hearing, 1/14/14, at 12; R.R. 184a. When business improved, Cooper tried to contact Claimant, but the telephone number he had for Claimant was no longer in service.

The WCJ found that Claimant sustained a work injury while working for Employer but was not "completely forthcoming regarding his attempts to secure employment since the work injury." WCJ Decision at 9, Finding of Fact No. 17. The WCJ did not credit Claimant's testimony that he ended his jobs because of his work injury, noting that Claimant suffered from Hepatitis C. The WCJ accepted Dr. Richards' opinion that Claimant's bilateral heel fractures had healed, but left him with a residual impairment, *i.e.*, arthritis. Claimant was 30 years old at the time of his injury.

The WCJ concluded that Claimant was entitled to disability compensation from September 7, 2010, through September 26, 2011, when he began working for Nitterhouse. The WCJ held that the compensation benefits were to be paid by Employer. If Employer did not make the payments, then the Guaranty Fund was liable for the compensation benefits due and owing.

Claimant appealed to the Board. He challenged the WCJ's suspension as of September 26, 2011, and assignment of secondary liability to the Guaranty Fund. The Board affirmed the WCJ's decision.

Claimant has petitioned for this Court's review.[5] Claimant first contends that his benefits should not have been suspended as of September 26,

---

[5] This Court's review of a workers' compensation adjudication determines whether an error of law or a constitutional violation was committed or whether the findings of fact are supported by

**(Footnote continued on the next page . . . )**

2011, because he was not able to return to his pre-injury job at that point and still is not able to work as a roofer. Second, Claimant contends that the Guaranty Fund has primary liability for the payment of his compensation benefits.

We begin with the suspension of benefits. The WCJ found that Claimant was entitled to weekly disability benefits of $500.25 per week based upon an average weekly wage of $750, which Claimant does not dispute. However, Claimant contends that his disability compensation should have been modified, not suspended, as of September 26, 2011. He argues that his work-related residual impairment has made it impossible for him to work at his pre-injury wage, which entitles him to partial disability. In each case where he left a job because of pain from his residual impairment, he is entitled to a reinstatement of total disability.

The Guaranty Fund responds that Claimant returned to work on September 26, 2011, at Nitterhouse and testified that his employment was terminated for absenteeism. The WCJ did not credit Claimant's testimony that his foot pain caused his absenteeism. Claimant's own testimony established that he left Cornerstone because of his Hepatitis C. WCJ Hearing, 4/23/13, at 29, 48; R.R. 39a, 58a. Further, the WCJ did not credit Claimant's testimony that foot pain caused him to leave his position with MSC Contracting. In short, Claimant did not establish the facts necessary for a reinstatement.

The claimant has the burden of proving all elements necessary to support an award of benefits. *Inglis House v. Workmen's Compensation Appeal*

---

**(continued . . . )**
substantial, competent evidence. *Myers v. Workers' Compensation Appeal Board (University of Pennsylvania and Alexsis, Inc.)*, 782 A.2d 1108, 1110 n. 1 (Pa. Cmwlth. 2001).

6

*Board (Reedy),* 634 A.2d 592, 595 (Pa. 1993). This encompasses the "burden of proving a continuing disability throughout the pendency of the claim petition." *Martin v. Workers' Compensation Appeal Board (Red Rose Transit Authority).* 783 A.2d 384, 390 (Pa. Cmwlth. 2001). To meet his burden a claimant must establish that "his disability continued throughout the claim proceedings without abatement or resolution." *Id.* at 391. "Disability" means a "loss of earning power." *City of Philadelphia v. Workmen's Compensation Appeal Board (Defruscio)*, 695 A.2d 910, 913 (Pa. Cmwlth. 1997). Where the claimant establishes that a work injury caused a loss of earning capacity, "the burden will shift to the employer to show that benefits should be suspended for a non-work-related cause even though the proceeding is before the WCJ on the claim petition." *Martin*, 783 A.2d at 391. "A suspension of benefits is only appropriate where the claimant's earning power is no longer affected by the work-related injury." *Id.*

The WCJ credited the opinion of Claimant's medical expert that Claimant's work injury resulted in a residual impairment. Specifically, the WCJ found as follows:

> *The testimony of Dr. Richard[s] is accepted as credible regarding the injury, the restrictions.* It is noted that [C]laimant was released to begin working in March 2011, and I find his testimony credible that the [C]laimant's heel fractures have healed, *he does have residual disability in the form of arthritis however I do not accept Dr. Richard's [sic] opinions that the [C]laimant is unable to work on or after September 26, 2011.*

WCJ Decision at 9, Finding of Fact No. 18 (emphasis added). Claimant challenges this factual finding because Dr. Richards did not opine that Claimant could not work after September 26, 2011. Rather, Dr. Richards testified that Claimant could

not return to his pre-injury position. However, Dr. Richards stated that as of September 26, 2011, Claimant could do light-duty work.

We agree that the WCJ's discussion is inadequate on several points. This requires a remand to resolve the ambiguities.

The first concerns Dr. Richards' testimony. The WCJ accepted this testimony "regarding the injury, the restrictions," suggesting that the WCJ believed that Claimant's impairment affected his earning power. WCJ Decision at 9, Finding of Fact No. 18. The WCJ's finding suggests that he found Claimant limited to sedentary work. On the other hand, the WCJ's reference to "the restrictions" may have referred to a disability that preceded September 26, 2011. As noted by Claimant, Dr. Richards did not state that Claimant could not do any job but, rather, could not work as a roofer making $150 per day.

Second, the WCJ did not fully address Claimant's work attempts. The WCJ acknowledged Claimant's continuing "heel problems" but also noted his Hepatitis C. The WCJ found Claimant did not stop "working for these employers due to problems solely related to his work injury of September 2010." WCJ Decision at 9, Finding of Fact No. 17(a)-(b). This finding does not address Claimant's first attempt to return to work, which predated the Hepatitis C. Nor does it address the fact that Claimant's Hepatitis C was resolved as of October 2013.

Third, the WCJ's finding that Claimant continued to have "heel problems" after September 2011 that affected his ability to work satisfied Claimant's burden of proof. Claimant did not have the obligation to prove the work injury is the "sole" cause of his inability to work. When a claimant is unable to work due to a combination of work-related and non-work-related causes, the

8

employer is liable "so long as the work-related cause is a substantial contributing factor to the disability." *Martin*, 783 A.2d at 389.

Because the findings of the WCJ are insufficient for this Court to conduct appellate review of Claimant's first issue, *i.e.,* that he is entitled to disability compensation, we must remand. *See Oriole Chemical Carriers, Inc., v. Workers' Compensation Appeal Board (Ambler)*, 720 A.2d 842, 844 (Pa. Cmwlth. 1998) (remand appropriate where "we are unable to conduct appellate review without engaging in speculation.").

Next, we address Claimant's second issue, which has no bearing on the remand. Claimant argues that the Board erred in making the Guaranty Fund secondarily liable for his compensation. Claimant contends that because the Guaranty Fund stands in the shoes of Employer, it must be primarily liable.

The Guaranty Fund responds that Section 1603(b) of the Act[6] specially recognizes that an uninsured employer remains primarily liable. It states, in relevant part, as follows:

> No compensation shall be paid from the fund until notice is given and the department determines that the employer failed to voluntarily accept and pay the claim or subsequently defaulted on payments of compensation. No compensation shall be due until notice is given.

77 P.S. §2703(b). Notably, the Department of Labor and Industry is authorized to seek reimbursement from an uninsured employer on behalf of the Guaranty Fund.[7]

---

[6] Added by the Act of November 9, 2006, P.L. 1362.

[7] Section 1605 provides, in relevant part, as follows:

> (b) Reimbursement.--*The department shall, on behalf of the fund, exhaust all remedies at law against the uninsured employer in order to collect the amount of a voluntary payment or award, including voluntary payment or award itself and*

**(Footnote continued on the next page . . . )**

Under Section 1603(b) of the Act, the Guaranty Fund's liability is not triggered until the employer fails to pay. This is the very definition of secondary liability. See BLACK'S LAW DICTIONARY 933 (8th ed. 2004) ("secondary liability" is "[l]iability that does not arise unless the primarily liable party fails to honor its obligation."). We reject Claimant's contrary argument.[8]

In sum, we vacate the WCJ's finding that Claimant was not entitled to disability benefits from September 26, 2011, onward and remand to the Board with the instruction that the matter be remanded to the WCJ for further factual findings. To be clear, the remand does not affect the WCJ's determination that Claimant sustained bilateral heel fractures on September 7, 2010; that Claimant's fractures

---

**(continued . . . )**

*reimbursement of costs, interest, penalties, fees under section 440 and costs of the fund's attorney, which have been paid by the fund.* The fund shall also be reimbursed for costs or attorney fees which are incurred in seeking reimbursement under this subsection. The department is authorized to investigate violations of section 305 for prosecution of the uninsured employer pursuant to section 305(b) and shall pursue such prosecutions through coordination with the appropriate prosecuting authority. Any restitution obtained shall be paid to the fund.

(c) Bankruptcy.**--**The department has the right to appear and represent the fund as a creditor in a bankruptcy proceeding involving the uninsured employer.

(d) Liens.**--**If payments of any nature have been made by the fund on behalf of an uninsured employer, the fund shall file a certified proof of payment with the prothonotary of a court of common pleas, and the prothonotary shall enter the entire balance as a judgment against the employer. The judgment shall be a statutory lien against property of the employer in the manner set forth in section 308.1 of the act of December 5, 1936 (2nd Sp.Sess., 1937 P.L. 2897, No. 1), known as the Unemployment Compensation Law, and execution may issue on it. The fund has the right to update the amount of the lien as payments are made.

77 P.S. §2705(b)-(d) (emphasis added), added by the Act of November 9, 2006, P.L. 1362.

[8] In its brief, the Guaranty Fund states that following the WCJ's determination that Claimant was entitled to benefits, it did indeed make the payments as ordered by the WCJ. Claimant does not dispute this or claim that the Guaranty Fund made any payment in an untimely manner.

healed as of September 26, 2011; and that the work injury left Claimant with a residual impairment in the form of arthritis in the left subtalar joint. We remand for a finding of whether Claimant established that this residual impairment limited his ability to work at his pre-injury job as of September 26, 2011, onward and, if so, how this impacted Claimant's earnings. The WCJ must determine whether Claimant's work-related impairment substantially contributed to a loss of earning power. In all other respects, the opinion of the Board is affirmed.

_____
MARY HANNAH LEAVITT, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joshua A. Snyder,                              :
         Petitioner                    :
                           :
        v.                            :  No. 1193 C.D. 2015
                           :
Workers' Compensation Appeal            :
Board (Kriner, d/b/a Kriner's Quality    :
Roofing and Uninsured Employers         :
Guaranty Fund),                              :
         Respondents                   :

# **O R D E R**

AND NOW, this 10th day of March, 2016, the order of the Workers' Compensation Appeal Board, dated June 16, 2015, is AFFIRMED in part, VACATED in part and this matter is REMANDED in accordance with the attached opinion.

Jurisdiction relinquished.

_____
MARY HANNAH LEAVITT, Judge