**Haddon CRAFTSMEN, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (KROUCHICK), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 16, 2002. Decided Oct. 22, 2002.

Matthew D. Dempsey, Scranton, for petitioner.

Mary D. Walsh–Dempsey, Scranton, for respondent.

John A. Bednarz, Jr., Wilkes–Barre, for amicus curiae, PA Trial Lawyers Association.

BEFORE: FRIEDMAN, Judge, SIMPSON, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge SIMPSON.

Haddon Craftsmen, Inc. (Employer) appeals an order of the Workers' Compensation Appeal Board affirming the decision of the Workers' Compensation Judge (WCJ) granting the fatal claim petition filed by Carol Krouchick (Claimant). We affirm.

Claimant filed a fatal claim petition alleging that her husband, John Krouchick (Decedent), suffered a fatal heart attack following his discharge from employment with Employer. Employer filed a timely answer denying all material allegations.

At a hearing before the WCJ, Claimant testified. Decedent worked as a forklift operator for Employer for 31 years. Decedent became very worried about losing his job in November 1996, after hearing rumors that Employer's plant was closing. Prior to his death, Decedent's personality changed, he became "touchy" and nervous and would "explode" when asked about his job. WCJ's Decision of April 17, 2001, Finding of Fact (F.F.) No. 5(B). On January 16, 1997, Decedent left for work at 7:00 a.m., but returned home within an hour, informing his wife that Employer's plant closed and he had been laid off. While at home, Decedent was in a terrible mood and was in tears. After watching an evening news report about Employer's plant

closing, Decedent suffered a fatal heart attack.

Claimant presented testimony by four of Decedent's former co-workers. All four witnesses testified that Claimant's duties required him to manually lift objects weighing between ten and seventy-five pounds. In the year preceding his death, Decedent struggled with the physical demands of his job. His co-workers observed that he had to sit down, hold his chest and take deep breaths while performing his duties.

Claimant also presented deposition testimony by Decedent's family physician, Dr. Candonino Gazmen, who is board-certified in general surgery. Dr. Gazmen testified Decedent had insulin dependent diabetes, coronary artery disease, peripheral vascular disease and neuropathies, but all of these were stable with medication. Dr. Gazmen opined the cause of death was "acute cardiopulmonary/cardiorespiratory insufficiency," caused by "acute myocardial infarction." Responding to a hypothetical question posed by Claimant's counsel, Dr. Gazmen opined that given Decedent's compromised cardiac condition, the physical and emotional work stress substantially contributed to his death. Reproduced Record (R.R.) 367. Dr. Gazmen also opined Decedent's complaints to co-workers concerning chest pains were indicative of "work overload." On cross-examination, Dr. Gazmen testified that Decedent had suffered two strokes, had a history of cardiac arrhythmia and was a heavy smoker.

Claimant also presented deposition testimony by Dr. Chau Fe Huang, Decedent's treating cardiologist. Dr. Huang testified in April 1996 he told Decedent to avoid manual activity and to perform only light duty work, because physical exertion would deteriorate his heart. Dr. Huang opined that the continued physical stress of Decedent's job aggravated the deterioration of his heart. R.R. 430. He concluded that Decedent suffered a heart attack that caused cardiac arrhythmia and triggered Decedent's sudden death. Dr. Huang opined that the emotional stress of Decedent's sudden termination initiated the fatal heart attack.

In response, Employer presented testimony by Dr. Richard Blum, a board-certified internist. Based on Decedent's history of heart disease, cigarette smoking and diabetes, Dr. Blum testified that Decedent's sudden death was predictable. He opined that the physical job duties were not the cause of death. However, Dr. Blum based this opinion on the mistaken belief that Decedent did not have physical symptoms while working. On cross-examination he conceded that mental stress could cause increased heart rate, triggering angina in a patient with coronary artery disease. He further acknowledged that, because emotional stress may cause increased adrenaline levels, an acute stressful event could place a sudden demand on the heart, thereby initiating a heart attack.

Employer also presented testimony by Joseph Maceyko, a supervisor at Employer's plant. Maceyko testified that he was familiar with Decedent's job responsibilities and that Decedent's work required very little heavy lifting. Maceyko further explained there was no light duty work available in Decedent's department.

The WCJ accepted as credible and persuasive the testimony of all of Claimant's witnesses. WCJ's Decision of September 17, 1998, Finding of Fact (F.F.) Nos. 26, 27, 28, 30. The WCJ accepted Employer's witnesses as credible, but not persuasive. F.F. Nos. 29, 32. Despite concluding that emotional stress caused Decedent's death, the WCJ determined his death did not occur within the scope of his employment. F.F. No. 33(h). The WCJ also concluded

that both physical and emotional stressors caused Decedent's heart attack. WCJ's Decision of September 17, 1998 at 13. Ultimately, the WCJ denied the fatal claim petition.[1]

Claimant and Employer appealed. The Board remanded the case for additional findings on causation and for proper application of the law.

■ Without considering additional evidence, the WCJ determined Decedent's heart attack arose out of the physical and emotional stress he suffered while in the course of employment. WCJ's Decision April 17, 2001, Finding of Fact (F.F.) No. 14. The WCJ found Claimant's witnesses more credible and convincing than any other record evidence. F.F. No. 6. The WCJ rejected Dr. Blum's testimony because his opinion was based on an incorrect assumption that Decedent performed his work duties without symptoms. *Id.* The WCJ found the physical stress of Decedent's job duties, coupled with the emotional stress occasioned by the rumors of the plant closing, substantially contributed to the fatal heart attack. Consequently, the WCJ granted the fatal claim petition. F.F. No. 15. The Board, on further appeal by Employer, affirmed. Employer now appeals to this Court.[2]

## I.

Employer first contends the Board exceeded its authority under Section 419 of the Workers' Compensation Act (Act),[3] by remanding this case after the WCJ denied Claimant's fatal claim petition. Specifically, Employer argues that because the WCJ's original decision was supported by sufficient, competent evidence, the Board improperly remanded the case.

■ Pursuant to Section 419 of the Act, the Board may remand a case where the WCJ's findings are not supported by substantial evidence or where the WCJ fails to make findings on a crucial issue necessary for the proper application of the law. *City of Phila. v. Workers' Compensation Appeal Bd. (Doherty)*, 716 A.2d 704 (Pa.Cmwlth.1998). This section "has been viewed as vesting virtually plenary remand power in the Board where it is determined that further factual findings are required to establish the entitlement to an award." *Samuel J. Lansberry, Inc. v. Workmen's Compensation Appeal Bd. (Switzer)*, 168 Pa.Cmwlth. 64, 649 A.2d 162, 164 (1994). Thus, if the Board determines the WCJ's findings are unclear, or if the initial findings do not plainly set forth the basis for rejecting a claim, the Board may remand the case and the WCJ may reverse the original decision. *Id.*

■ Moreover, where, as here, a WCJ makes findings that are inconsistent with his legal conclusions, the Board must remand the case for additional findings to clarify the decision. *Pacemaker Driver Serv. v. Workmen's Compensation Appeal*

---

1. The WCJ did, however, grant a separate claim petition filed by Claimant for injuries to Decedent's leg, hip and groin suffered in the scope of employment.

2. Our review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether Board procedures were violated, whether constitutional rights were violated or an error of law was committed. *Bey v. Workers' Compensation Appeal Bd.*, 801 A.2d 661 (Pa.Cmwlth.2002).

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 852. This section provides, in pertinent part: "[t]he board may remand any case involving any question of fact arising under any appeal to a referee to hear evidence and report to the board the testimony taken before him or such testimony and findings of fact thereon as the board may order."

*Bd. (Merman and Fireman's Fund Ins. Co.)*, 131 Pa.Cmwlth. 560, 571 A.2d 5 (1990).

■ Regarding the first opinion, the Board noted that the proper inquiry is whether Decedent's heart attack is brought on by something that arose out of the scope of his employment, notwithstanding where the heart attack occurred. The Board determined the WCJ made inconsistent findings regarding the cause of Decedent's heart attack. Specifically, in his first opinion, the WCJ found that Decedent's heart attack was caused by emotional stress. F.F. 33(h). However, the WCJ concluded that Decedent's heart attack resulted from both physical and emotional stress. Therefore, the Board remanded the case for additional findings to clarify the cause of Decedent's heart attack.[4]

■ The question of whether Decedent's heart attack occurred within the scope of employment is a question of law based on factual findings. *Spangler Fire Co. v. Workmen's Compensation Appeal Bd. (Greer)*, 144 Pa.Cmwlth. 487, 601 A.2d 931 (1992). In his first opinion, the WCJ failed to make findings on this crucial issue necessary for proper application of the law. Also, the WCJ made findings inconsistent with conclusions. Therefore, the Board properly remanded this case.

## II.

Employer next contends Claimant failed to present unequivocal medical evidence that the physical demands of Decedent's job substantially contributed to his heart attack. Additionally, Employer argues Claimant's medical testimony is not competent because it was given in response to a hypothetical question that assumed facts not of record.

■ In heart attack cases where the causal connection between a decedent's work and his sudden cardiac death is not obvious, the connection must be established by unequivocal medical testimony. *Robert W. Borschell Painting v. Workmen's Compensation Appeal Bd. (DeMuro)*, 154 Pa.Cmwlth. 157, 623 A.2d 394 (1993). Medical evidence is considered unequivocal if the medical expert, after providing a foundation, testifies that in his medical opinion, he thinks the facts exist. *Martin v. Workers' Compensation Appeal Bd.*, 783 A.2d 384 (Pa.Cmwlth.2001). In conducting our review, we examine the testimony as a whole and do not take words out of context. *Martin.* In addition, not every utterance from a medical witness on a medical subject must be certain, positive, and without any reservation. Moreover, as the sole arbiter of the credibility of testimony and other evidence, the WCJ is free to reject or accept the testimony of any witness, including medical witnesses, in whole or in part. *Id.*

■ Here, the testimony of Drs. Huang and Candonino supports the WCJ's findings that both physical and emotional work-related stress substantially contributed to Decedent's death. Claimant's counsel posed a hypothetical question detailing Decedent's emotional and physical condition, and Dr. Gazmen opined "judging from what is already the existing compromised cardiac condition of John, any stress put upon him ... at work, physically or emotionally, due to the closing of his work place would have contributed substantially to his death." Reproduced Record (R.R.) 367. Further, when asked about the effects of physical stress, Dr. Gazmen opined:

---

4. Because of the resolution of this issue, we need not consider other arguments concerning the propriety of the Board's remand order.

[t]he coronaries are partially occluded already, such that when you add on physical exertion, the heart is—the demand on the heart is to increase the rate and workload and oxygen demand, but the coronaries are already tight to start with, and they cannot deliver. Partially you cause chest pain. That's angina. But if you need a lot of oxygen because of the workload, you will precipitate a heart attack.

R.R. 367–68.

Dr. Gazmen also testified that Decedent's reported chest pains to co-workers were significant because they were indicative of "work overload." R.R. 368.

Dr. Huang testified that physical stress increases blood pressure and heart rate, making the heart more prone to deterioration. R.R. 423–24. He recommended Decedent avoid any physical stress because it would further enhance the deterioration of the heart and cause heart failure. R.R. 423.

The WCJ accepted the testimony of Dr. Huang and Dr. Gazmen as credible and persuasive. WCJ's Decision of April 17, 2001, Finding of Fact No. 6. Relying on this testimony, the WCJ determined that both physical and emotional stress arising out of Decedent's job substantially contributed to his death. F.F. No. 14, 15. In particular, the physical demands aggravated Decedent's heart deterioration and were a substantial factor in causing the heart attack. F.F. No. 15. Taken as a whole, Dr. Gazmen and Dr. Huang offered the unequivocal opinions that physical and emotional stress were substantial factors in causing Decedent's heart failure.

■ Regarding the hypothetical question posed by Claimant's counsel, it is well-settled that hypothetical questions must be based on matters appearing of record and on facts warranted by the evidence. *Holy*

*Family Coll. v. Workmen's Compensation Appeal Bd. (Kycej)*, 84 Pa.Cmwlth. 109, 479 A.2d 24 (1984). Employer asserts that the medical testimony is incompetent because the hypothetical question assumed a fact not of record. Specifically, Employer asserts that there is no record evidence that Decedent complained of chest pains. We disagree.

■ Decedent's co-workers testified concerning their observations of Decedent's deteriorating physical condition. Specifically, Louis Plotkin observed Decedent sitting down, taking deep breaths and holding his chest. Decedent often complained to Plotkin about the rigors of his work. F.F. No. 5(I). Robert Kozel observed Decedent "hurting" while performing his duties. F.F. No. 5(J). Benny Fortese noted that Decedent's duties, made him "winded and short of breath." F.F. 5(M). In addition, Decedent complained to Fortese that he had difficulty performing his job. *Id.* Therefore, there is sufficient record evidence to support this assumed fact.

### III.

Finally, Employer asserts the Board erroneously failed to consider our Supreme Court's holding in *Davis v. Workers' Compensation Appeal Bd. (Swarthmore Borough)*, 561 Pa. 462, 751 A.2d 168 (2000).

In *Davis,* our Supreme Court examined the standard to be applied where a claimant asserts a psychic injury manifests itself through physical symptoms. The Court held that when a claimant asserts a psychic injury manifests itself through psychic and physical symptoms, the claimant must prove his injury occurred as a result of abnormal working conditions. This holding applies to cases in which work-related mental stress causes a heart attack. *Erie Bolt Corp. v. Workers' Compensation Appeal Bd. (Elderkin)*, 562 Pa.

175, 753 A.2d 1289 (2000); *Farmery v. Workers' Compensation Appeal Bd.*, 776 A.2d 349 (Pa.Cmwlth.2001).

In addition, Employer relies on *Erie Bolt* for the proposition that a reversal is necessitated here. In *Erie Bolt*, the claimant filed a fatal claim petition alleging her husband suffered a fatal heart attack after being discharged from employment. She asserted that the repeated stress and tension to which her husband was subjected, with the sudden shock at the time he learned of his job termination, caused his heart attack. We held that, because the acute stress of termination triggered the fatal heart attack, the Board properly granted the fatal claim petition. Our Supreme Court, however, reversed this Court based on its decision in *Davis*.

Although psychological stress was a factor in causing Decedent's heart attack here, it was not the sole factor. To the contrary, the medical evidence establishes the physical demands of Decedent's work substantially contributed to his fatal heart attack. Unlike *Erie Bolt*, here the WCJ found that the physical requirements of Decedent's job, coupled with the emotional stress of termination, triggered Decedent's cardiac death. Therefore, because Decedent's heart attack was not simply a physical manifestation of psychological symptoms, *Erie Bolt* does not compel a reversal.

It is undisputed that Decedent's heart attack did not occur as a result of abnormal working conditions. Clearly, Claimant cannot satisfy the *Davis* psychic injury test. However, Claimant also asserts that the physical stress of Decedent's job substantially contributed to his heart attack. Therefore, we must also consider whether Claimant satisfied the physical injury test.

Our decision in *Villanova Univ. v. Workers' Compensation Appeal Bd. (Mantle)*, 783 A.2d 366 (Pa.Cmwlth.2001) is helpful. In *Mantle*, the claimant filed a fatal claim petition alleging her husband suffered a fatal heart attack as a result of physical work activities. The claimant's medical witnesses credibly opined that physical exertion triggered the claimant's fatal heart attack. Based on this testimony, we held the heart attack was causally related to the decedent's work activities and was therefore a compensable injury.

Here, as in *Mantle*, the WCJ found credible the testimony of Claimant's physicians, who opined that Decedent's physical activities while at work substantially contributed to his fatal heart attack. Because the causation finding is based on substantial record evidence, we agree that causation has been proved. Therefore, we conclude that the Board reached a lawful decision.

Accordingly, we affirm.

### ORDER

AND NOW, this 22nd day of October, 2002, the order of the Worker's Compensation Appeal Board is affirmed.

Judge FRIEDMAN concurs in the result only.