IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michele Chase,                          :
               Petitioner          :
                           :
        v.                            :
                           :
Workers' Compensation Appeal            :
Board (Trustees of the University       :
of Pennsylvania),                       :    No. 1414 C.D. 2018
               Respondent          :    Submitted: June 21, 2019


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON          FILED: August 14, 2019


        Michele Chase (Claimant) petitions, *pro se*, for review of the September 20, 2018 order of the Workers' Compensation Appeal Board (Board) affirming the decision and order of Workers' Compensation Judge Bonnie Callahan (WCJ) granting, in part, Claimant's Claim Petition for Compensation Benefits (Claim Petition) filed against the Trustees of the University of Pennsylvania (Employer) pursuant to the Workers' Compensation Act (Act),[1] and granting the Petition to Terminate Compensation Benefits (Termination Petition) filed by Employer against Claimant pursuant to the Act. We affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

On November 13, 2014, while working as a nursing assistant for Employer, Claimant suffered an injury to her neck and right shoulder when a patient fell into her arms. WCJ Decision dated September 20, 2017, Certified Record Item No. 9 (WCJ Decision), Findings of Fact (F.F.) 2(a). Claimant reported the incident to her superiors and filled out an injury report. *Id.* She received treatment for her injuries at an emergency room. *Id.* Four days later, on November 17, 2014, she was treated at Employee Health and released back to work without restrictions. *Id.* She returned to her pre-injury job at that time. *Id.*

Nearly a year later, on October 12, 2015, while lifting and carrying a chair at work, Claimant again felt pain in the same area of her neck and shoulder previously affected by the November 2014 work-related injury. F.F. 2(a)-(b). Claimant reported the October 12, 2015 incident to her supervisor and filled out an incident report. F.F. 2(a). Claimant reported to Employee Health and was taken out of work. *Id.* On October 28, 2015, Claimant was released to return to work with restrictions, but no light-duty positions were available with Employer at that time. F.F. 2(b). On December 4, 2015, Claimant was released to return to work without restrictions, and she returned to her pre-injury job at her pre-injury wages at that time. F.F. 2(a).

Claimant continued to work at her pre-injury job with Employer until November 4, 2016, when she was taken out of work by Norman Stempler, D.O., whom she saw for the first time on that day. F.F. 2(c)-(d). Claimant had not complained to anyone at work of increased pain prior to leaving work on the order of Dr. Stempler. F.F. 2(c).

On November 16, 2015, Claimant filed the Claim Petition seeking partial disability benefits for an alleged work-related injury described as "[c]ervical

2

radicul[o]pathy, neck, right shoulder pa[i]n along with pain i[n] the right arm," which Claimant related to the November 13, 2014 incident. *See* Claim Petition. Employer timely filed an answer denying all material and relevant allegations of the Claim Petition. *See* Answer to Claim Petition, Certified Record Item No. 4.

On August 17, 2016, Claimant underwent an Independent Medical Evaluation (IME) conducted by Todd Kelman, D.O., who opined that Claimant suffered a work-related injury on November 13, 2014, from which she had fully recovered. *See* F.F. 4(a)-(c). Based on Dr. Kelman's findings, on February 14, 2017, Employer filed the Termination Petition alleging Claimant had fully recovered from her November 13, 2014 work-related injury as of August 17, 2016, the date of the IME. *See* F.F. 1; Board Opinion at 1.[2]

After consolidating the petitions and conducting hearings on the matter, the WCJ decided the Claim and Termination Petitions by decision issued on September 20, 2017. *See* WCJ Decision. In the WCJ Decision, the WCJ found: (1) Claimant met her burden of proving that she sustained a work-related injury on November 13, 2014, which resulted in a closed period of disability from October 12, 2015 through December 4, 2015; (2) Claimant did not meet her burden of proving that her disability continued beyond August 17, 2016; and (3) Employer met its burden of proving that Claimant had fully recovered from the work-related injury as of August 17, 2016. *See* WCJ Decision at 8; Board Opinion at 1. Accordingly, the

---

[2] The WCJ also determined Employer was not responsible for the payment of Claimant's litigation fees. WCJ Decision at 9. Specifically, the WCJ determined that, because she found Dr. Stempler's testimony to be not credible in its entirety, Claimant was not entitled to reimbursement of Dr. Stempler-related costs and fees. *Id.* On appeal, however, the Board determined that, because Employer had forced Claimant to proceed with litigation in which Claimant was partially successful, the WCJ erred in denying Claimant her requested litigation fees. *See* Board Opinion at 4-8. Thus, the Board modified the WCJ Decision to include payment of those costs. *See* Board Opinion at 4-8. *Id.* No party challenges this determination on appeal to this Court.

WCJ: (1) granted the Claim Petition, in part, awarding Claimant temporary total disability benefits for the closed period of October 12, 2015 to December 4, 2015; (2) suspended Claimant's benefits as of December 4, 2015; and (3) granted the Termination Petition, terminating Claimant's benefits as of August 17, 2016. *See* WCJ Decision at 9; Board Opinion at 1. Claimant appealed the WCJ's ruling that she had fully recovered from her work injury, and the Board affirmed by opinion dated September 20, 2018. *See* On-line Appeal, Certified Record Item No. 10; *see also generally* Board Opinion. Claimant timely petitioned this Court for review.[3]

To the extent Claimant's brief contains discernable arguments,[4] Claimant contends that the Board erred in affirming the WCJ's determination that

---

[3] In workers' compensation appeals, this Court's "scope of review is limited to determining whether constitutional rights have been violated, whether an error of law was committed and whether necessary findings of fact are supported by substantial evidence." *Morocho v. Workers' Comp. Appeal Bd. (Home Equity Renovations, Inc.)*, 167 A.3d 855, 858 n.4 (Pa. Cmwlth. 2017) (citing *Johnson v. Workmen's Comp. Appeal Bd. (Dubois Courier Express)*, 631 A.2d 693 (Pa. Cmwlth. 1993)).

> Substantial evidence is such relevant evidence a reasonable person might find sufficient to support the WCJ's findings. In determining whether a finding of fact is supported by substantial evidence, this Court must consider the evidence as a whole, view the evidence in a light most favorable to the party who prevailed before the WCJ, and draw all reasonable inferences which are deducible from the evidence in favor of the prevailing party.

*Frog, Switch & Mfg. Co. v. Workers' Comp. Appeal Bd. (Johnson)*, 106 A.3d 202, 206 (Pa. Cmwlth. 2014) (internal quotations and citations omitted).

[4] Claimant's Statement of Questions Involved includes nine (9) purported claims listed, verbatim, as follows:

> 1. It is known that the Claimant went out of work, on November 13, 2014 and October 12, 2015 due to her work injury. However, according to the opinion of Wilderman Commissioner of the Workman's Compensation Appeal Board, what did the claimant testify regarding when and why she came out of work due to her injuries? (Workman's Comp Appeal Board Opinion, pg. 3 of 8).

4

".On November 13, 2014, a patient she was helping with fell into her and she injured her neck and shoulder. She reported her injury but continued working until October 12, 2015, when she felt more pain in her shoulder and was taken off work by the Defendant's doctor."

2. Although, the judge found I the Claimant's testimony creditable in part, there are missing facts. Therefore, accordingly to testimony did the claimant miss any time off due to the injury on November 13, 2014? Claimant's summarized testimony (Finding of facts pg. 3 of 9) and (Findings of Facts pg. 6 of 9 paragraph 4)

3. Over time an injury left undiagnosed can easily be Triggered. When did the claimant state that she had pain, with the second work incident? And what was the pain level and affected area stated in here testimony, that is consistent with her first injury date?

The Court order summarized claimant's testimony as follows "As on May 31, 2017 she had increased pain in her right shoulder, right hand and fingers. She had pain in her left shoulder, neck, right neck, pain down her right leg, and pain in her mid-back section. She was not capable of performing her pre-injury job. She did not feel fully recovered when she saw Dr. Kelman in August 2016. She estimated the chair she lifted in October 2015 weighted maybe (20) pounds. She was able to perform some activities of daily living. She continued to treat with Dr. Stempler and take pain medication" (Findings of Facts, pg. 4 of 9, paragraph 1).

4. If there were no MRI testing done before November 13, 2014, we should not assume there was an injury already present. Especially since the claimant was being seen by her own pain specialist, with in the Defendants Health Care system. Therefore, what were the October 17, 2015 MRI results in Dr. Normans Stemplers testimony?

"He reviewed an MRI of the cervical spine that revealed multi-level degenerative disc diseases with disc protrusion" (Finding of fact pg. 4 of 9) And are these results consistent with working, over a period with these types of injuries? If so, what should be done according to Dr. Stemplers testimony? "He recommended taking claimant out of work and minimizing her physical activity. He opined there was a direct casual relationship between Claimant's ongoing continued complaints and the events related." (Findings of facts pg. 4 of 9)

5. What were the finding of the MRI results Claimants filed petition of review? (Claimant filled petition – pg. 2 of 4 continued) (RR pg. 16). Also, it is a fact that the claimant is right hand dominate, however she does not have the strength nor the grip she once had. Consequently, what are some of the findings in Dr. Kelman's deposition testimony upon examination of the claimant? (Finding of facts pg. 5 of 9 section- b) and (Findings of facts 6 of 9 section -d)

6. The Claimant was being seen for an unrelated medical matter. Has the claimant even acknowledged treatment for any injuries unrelated to the November 13, 2014 injury or the October 12, 2015 injury? And did she try to treat with her Dr. for the work injury that originated on November 13, 2015?

"She had lower back problems, unrelated to her work injury, prior to November of 2014" Claimant testimony (Findings of facts pg. 3 of 9-(b)

7. Since the claimant was out of work October 12, 2015 through December 4, 2015 on Short-term disability, knowing she had a work injury, no MRI was done by the Defendant before she returned to work, as required to be sure the claimant was completely healed. (Especially after reading her October MRI results) So, what were the findings during Dr. Kelman's office examination on August 17, 2016? (Findings of Facts, pgs. 5 and of 9 section 4b).

8. Although the MRI results does not reflect a cervical/trapezial strain/sprain; Was the defendant held liable/agree in any capacity of the claimant's injury during November 13, 2014 or during the closed period she was out of work from October 12, 2015 to December 4, 2015? In addition, was any payment granted? (Worker's Compensation Judge Bonnie Callahan, (Findings of Fact Order pg. 9 of 9).

"The party agree that Claimant sustained a work- related injury on November 13, 2014 in the form of a cervical strain as set forth in Dr. Kelman's August 17, 2016 IME Report" (Stipulation of Facts pg. 2- Description of Injury) In addition did the employer ever accept than deny responsibility of the claimants injury? (Opinion pg. 5 and 6 of 8)

9. Between the November 13, 2014 injury and her second injury in October 2015, over that time leading up to her having to stop

6

substantial evidence existed to grant the Termination Petition. *See* Claimant's Brief at 19-22. Claimant is not entitled to relief.

As this Court has explained:

> In a termination proceeding, the employer bears the burden of proving that a work-related disability has ceased. This burden can be met by presenting unequivocal and competent medical evidence of a claimant's full recovery from a work-related injury.[5] A determination of whether medical testimony is equivocal is a conclusion of law fully reviewable by this Court. Credibility of witnesses, however, is for the [WCJ] to evaluate and he or she may accept the testimony of one witness over that of another.

*Koszowski v. Workmen's Comp. Appeal Bd. (Greyhound Lines, Inc.)*, 595 A.2d 697, 699 (Pa. Cmwlth. 1991) (internal citations omitted).

Here, Claimant testified before the WCJ on April 6, 2016 and May 31, 2017. *See* F.F. 2; *see also* Notes of Testimony, April 6, 2016, Certified Record Item No. 15 & Notes of Testimony, May 31, 2017, Certified Record Item No. 19. Claimant testified that on November 13, 2014, she was employed by Employer as a certified nursing assistant. *See* F.F. 2(a). On that date, Claimant explained, she was injured when a patient fell into her arms, injuring her neck and right shoulder. *Id.* Claimant reported the injury to her supervisor and filled out an appropriate injury report. *Id.* Claimant testified that she treated at an emergency room for her injuries

___

working on November 4, 2016 how was the Claimant feeling with her pain? (Summarized – Finding of facts pg. 3 of 9 section c )

Claimant's Brief at 6-14 (verbatim).

[5] "Medical evidence is considered unequivocal if the medical expert, after providing a foundation, testifies that in his medical opinion, he thinks the facts exist." *Craftsmen v. Workers' Comp. Appeal Bd. (Krouchick)*, 809 A.2d 434, 439 (Pa. Cmwlth. 2002).

and then reported on November 17, 2014 to Employee Health, at which point she was released to return to work without restrictions. *Id.* Accordingly, Claimant testified she returned to her pre-injury job on November 17, 2014. *Id.*

Claimant further testified that, between November 17, 2014 and October 12, 2015, she received no treatment for her neck and shoulder injury. *See* F.F. 2(b). She explained that, between those dates, her symptoms would come and go, but were not severe. *See* F.F. 2(a).

Claimant additionally testified that, while at work on October 12, 2015, she lifted a chair[6] and felt a pulling sensation in the same location of her shoulder and neck that had been previously affected by the November 2014 work injury. F.F. 2(a)-(b). As before, Claimant reported the incident to her supervisor and filled out an appropriate incident report. F.F. 2(a)-(b). She reported to Employee Health, where she was taken out of work and referred for diagnostic testing. F.F. 2(a)-(b). Claimant explained that she was released to return to work with restrictions as of October 28, 2015, but did not return at that time because Employer had no light-duty positions available. F.F. 2(a)-(b). Claimant explained that she returned to work in her pre-injury job at her pre-injury wages on December 4, 2015. F.F. 2(b) & (d).

Claimant testified that, over time following her December 4, 2015 return to work, her symptoms continued and increased such that she had pain in her neck, back, and shoulders on both her right and left sides and that the pain also went down her right leg. F.F. 2(c). Claimant explained that she continued to work full-time until November 4, 2016, when her pain became so severe that she could no longer work. F.F. 2(c). Claimant conceded she had told no one at work about her pain or about how she was feeling. F.F. 2(c). She saw Dr. Stempler for the first

---

[6] Claimant approximated the weight of the chair to be around 20 pounds. *See* F.F. 2(c).

time on November 4, 2016, and he removed her from work on that date. F.F. 2(d). Claimant testified that by May 31, 2017, she was no longer capable of performing her pre-injury job due to increased pain in her right shoulder, neck, right hand and fingers, right leg, and additional pain in her left shoulder and mid-back. F.F. 2(c). Claimant explained that she did not feel fully recovered at the time of her IME and continues to suffer from constant pain. F.F. 2(c)-(d).

Claimant also presented Dr. Stempler's deposition testimony. F.F. 3. Dr. Stempler, an orthopedic surgeon, testified that he examined Claimant for the first time on November 4, 2016, at which time she presented with multiple claims of neck, back, and upper right extremity pain. F.F. 3(a). Dr. Stempler testified that he took a medical history from Claimant in which she related the onset of her injuries to the November 13, 2014 work incident and discussed the exacerbation of her symptoms on October 12, 2015. F.F. 3(a). Dr. Stempler testified he reviewed an MRI of Claimant's cervical spine that revealed multi-level degenerative disc disease with disc protrusion and an MRI of Claimant's lumbar spine that likewise showed positive findings, although Claimant had no lumbar complaints at the time. F.F. 3(a). Dr. Stempler explained he ordered a third MRI, of the thoracic spine this time, which also revealed evidence of multi-level degenerative disc disease and other abnormalities. F.F. 3(a).

Dr. Stempler testified that he examined Claimant and arrived at an initial impression of chronic, ongoing aggravated cervical and thoracic musculoligamentous injury with myofascitis, myofascial syndrome, aggravated degenerative disc disease of the cervical spine with right upper extremity cervical radiculopathy, and aggravated degenerative disc disease of the thoracic spine. F.F. 3(b). Dr. Stempler took Claimant off of work and recommended that she minimize

9

her physical activity. F.F. 3(b). Dr. Stempler further testified that a direct causal relationship existed between Claimant's work incidents and her ongoing continued complaints. F.F. 3(b).

Dr. Stempler testified he saw Claimant again on December 2, 2016 and February 1, 2017, and that she remained symptomatic at the later visits. F.F. 3(b). Dr. Stempler ultimately diagnosed Claimant with chronic, ongoing aggravated degenerative disc disease of the cervical and thoracic spine, right cervical radiculopathy and ongoing associated musculoligamentous injury of the cervical/thoracic spine. F.F. 3(b). Dr. Stempler testified that Claimant remains disabled from her previous work as a result of this condition. F.F. 3(b).

In support of the Termination Petition, Employer presented the deposition testimony of Todd Kelman, D.O. F.F. 4. Dr. Kelman, a board-certified orthopedic surgeon, examined Claimant on August 17, 2016. F.F. 4(a). Dr. Kelman testified that Claimant reported that she was working without restrictions at the time of the examination. F.F. 4(a). Dr. Kelman explained that Claimant complained of right-sided neck and shoulder pain, but did not have left-sided pain. F.F. 4(a). Dr. Kelman testified Claimant reported to him the November 2014 and October 2015 work incidents. F.F. 4(a). He reviewed her medical records and noted that the cervical spine MRI showed bilateral degenerative changes at multiple levels, but no evidence of any frank disc herniation. F.F. 4(a). Dr. Kelman testified that his physical examination of Claimant revealed no midline percussion tenderness in either the cervical or thoracic spine. F.F. 4(b). Claimant displayed a full range of rotation despite subjective complaints of discomfort in the back of the shoulder. F.F. 4(b). Dr. Kelman opined that Claimant had sustained a cervical and trapezial strain and sprain and had dysesthesias in her right hand of an unknown ideology. F.F. 4(c).

10

He explained that Claimant's 2015 EMG had been normal, her provocative tests were negative for carpal tunnel or ulnar nerve problems, and her reflexes were intact. F.F. 4(c). He found no anatomical explanation for her related dysesthesias. F.F. 4(c). Ultimately, Dr. Kelman opined that Claimant was fully recovered from her work injury, was capable of returning to work without restrictions, and required no further treatment for her cervical and trapezial sprain/strain. F.F. 4(c).

Based on the evidence presented, the WCJ made the following relevant determinations:

> 5. [Claimant's] testimony is credible that she felt pain in her neck and right shoulder/trapezius after she caught a patient on November 13, 2014; she was released to her full duty job on November 17, 2014, after which she continued to work her full duty job until October 12, 2015, when she felt increased symptoms after lifting a chair; she gave timely notice of both incidents; she was out of work from October 12, 2015 to December 4, 2015; she was released to return [to] full duty work and did so as of December 4, 2015; and she continued to work her pre-injury job until she was taken out of work by Dr. Stempler on November 4, 2016. Her testimony is not credible that she continued to have ongoing disability related to the work injury as of November 4, 2016 such that she needed to stop working. Her testimony is not credible that as of November 4, 2016, she was no longer capable of performing her pre-injury job. Her testimony is not credible that she sustained injuries other than a cervical and trapezial strain and sprain as a result of either the 11/13/14 or 10/12/15 incidents. In so finding, this Judge finds it significant that, following the initial incident, Claimant was released to return to her full duty job three days afterwards and she continued to work her full duty job for almost a year until the incident of October 12, 2015. This Judge finds it significant that following the October 12, 2015 incident, Claimant was released to return to her full duty job and did so on

11

December 4, 2015. This Judge finds it significant that Claimant continued to work her pre-injury job without restrictions for almost a year until she saw Dr. Stempler on November 4, 2016, to whom she was referred by her attorney. This Judge finds it significant that Claimant received very little medical treatment other than treating at Employee Health on a few occasions until she began treating with Dr. Stempler on November 4, 2016.

6. The testimony of Dr. Stempler is not credible. His testimony is not credible that Claimant was not capable of performing her pre-injury job on November 4, 2016 and thereafter. His testimony is not credible regarding the diagnoses Claimant sustained as a result of the November 13, 2014 incident and the October 12, 2015 incident. This Judge finds it significant that Claimant was performing her full duty job until she first saw Dr. Stempler on November 4, 2016. Dr. Stempler had no information regarding the October 12, 2015 incident and thought Claimant was performing patient care at that time. He agreed the MRIs showed significant degenerative findings in the cervical and thoracic spine that were chronic and pre-existed the November 2014 incident. He was of the opinion [that] Claimant was working modified duty when he first saw her on November 4, 2016, which is contrary to Claimant's testimony.

7. The testimony of Dr. Kelman is credible. His testimony is credible that Claimant sustained a cervical and trapezial strain and sprain as a result of the November 13, 2014 work incident from which she had fully recovered as of August 17, 2016. His testimony is credible that Claimant did not sustain any additional injuries as a result of either the November 13, 2014 or October 12, 2015 incidents. The testimony of Dr. Kelman is accepted over the testimony of Dr. Stempler to the extent their testimonies conflict. The testimony of Dr. Kelman is more consistent with Claimant's work history and the diagnostic study results than is the testimony of Dr. Stempler.

12

F.F. 5-7. Of course, the WCJ determines witness credibility and the weight of evidence, and neither the Board nor this Court may overturn those determinations on appeal. *Koszowski*; *see also Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs. & Uninsured Employer Guar. Fund)*, 159 A.3d 61, 69 (Pa. Cmwlth.), *reargument denied* (Apr. 3), *appeal denied*, 173 A.3d 252 (Pa. 2017) ("Neither the Board nor this Court may reweigh the evidence or the WCJ's credibility determinations.").

As a result of the WCJ's credibility determinations, which we must accept, as did the Board,[7] we find that substantial record evidence supports the WCJ's findings of fact. Specifically, Dr. Kelman's credible testimony supports the WCJ's finding that Claimant had fully recovered from her November 13, 2014 work-related injury as of August 17, 2016. Therefore, the WCJ properly terminated Claimant's compensation benefits from August 17, 2016 onward. *See* WCJ Decision at 8 & Order. Claimant's assertions of error represent nothing more than a challenge to the WCJ's credibility determinations and an attempt to argue her preferred version of the facts. The Board did not err in affirming the WCJ's Decision.

Accordingly, the Board's order is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[7] *See* Board Opinion at 3.

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michele Chase,  
             Petitioner       :
                              :

             v.                  :

Workers' Compensation Appeal    :  
Board (Trustees of the University  :  
of Pennsylvania),                 :     No. 1414 C.D. 2018  
             Respondent   :

## O R D E R

AND NOW, this 14th day of August, 2019, the September 20, 2018 order of the Workers' Compensation Appeal Board is AFFIRMED.

 

 

_____  
CHRISTINE FIZZANO CANNON, Judge