IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brenda Harris,                              :
                    Petitioner             :
                                            :
            v.                              :
                                            :
Workers' Compensation Appeal Board          :
(Allied Barton Security Services, LLC),     :    No. 554 C.D. 2019
                    Respondent             :    Submitted:  August 23, 2019


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON                     FILED:  January 3, 2020


            Brenda Harris (Claimant) petitions for review of the May 3, 2019 order
of the Workers' Compensation Appeal Board (Board) affirming the order of
Workers' Compensation Judge Kathleen DiLorenzo (WCJ) that:  (1) granted the
Petition to Terminate Compensation Benefits (Termination Petition) filed by Allied
Barton Security Services, LLC (Employer) against Claimant pursuant to the
Workers' Compensation Act (Act),[1] and (2) granted two (2) Petitions for Review of
Utilization Review Determination (collectively, UR Petitions) filed by Employer.
We affirm.

_____

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

During the course of her work and training as a security guard for Employer, Claimant developed work-related bilateral carpal tunnel syndrome, bilateral trigger fingers, and bilateral trigger thumbs that caused her to leave work on August 21, 2014. *See* WCJ Decision dated March 6, 2018 (WCJ Decision), Findings of Fact (F.F.) 3 & 6; *see also* Decision and Order of Workers' Compensation Judge Sarah Makin dated June 3, 2016 (Prior WCJ Decision). Employer issued a Notice of Temporary Compensation Payable followed by a Notice of Conversion that accepted liability for Claimant's August 15, 2014 work injury. F.F. 4. As a result of this work injury, Claimant underwent hand surgery and was unable to perform her job duties from August 21, 2014 through August 7, 2015. F.F. 3. Claimant filed a claim petition and was granted workers' compensation benefits. F.F. 3; *see also* Prior WCJ Decision.

On August 1, 2017, Employer filed the Termination Petition alleging Claimant had fully recovered from her work injury as of July 10, 2017. On December 15, 2017, Employer filed the UR Petitions seeking review of the determinations that the treatment provided Claimant by Angelo Karakasis, D.C., from March 17, 2017 and ongoing, and Bruce Grossinger, D.O., from June 1, 2017 and ongoing, was reasonable and necessary. Claimant answered Employer's petitions.

Following a hearing,[2] the WCJ decided the Termination Petition and UR Petitions by decision issued on March 6, 2018. *See* WCJ Decision. The WCJ found: (1) Employer, through the testimony of William Kirkpatrick, M.D., met its burden of proving that Claimant made a full recovery from her work-related injury

_____

[2] The WCJ conducted a hearing on August 16, 2017, at which Claimant testified. The WCJ received testimony of the medical witnesses in this matter via transcripts of their depositions.

2

as of July 10, 2017; and (2) Employer met its burden of proving that the reviewed and continuing medical treatment of Drs. Grossinger and Karakasis was neither reasonable nor necessary because Claimant had made a full recovery.  *See* WCJ Decision at 12.  Accordingly, the WCJ:  (1) granted the Termination Petition, terminating Claimant's benefits as of July 10, 2017; and (2) granted the UR Petitions.  *See* WCJ Decision at 12-13.  Claimant appealed and the Board affirmed the WCJ Decision by opinion dated May 3, 2019 (Board Opinion).  *See generally* Board Opinion; *see also* On-Line Appeal dated March 9, 2018.  Claimant timely petitioned this Court for review.[3]

On appeal, Claimant alleges that the Board erred in affirming the WCJ's grant of the Termination Petition because the medical evidence presented was insufficient to support a termination of benefits.  *See* Claimant's Brief at 4 & 7-11.  We disagree.

Initially, as this Court has explained:

> In a termination proceeding, the employer bears the burden of proving that a work-related disability has

---

[3] In workers' compensation appeals, this Court's "scope of review is limited to determining whether constitutional rights have been violated, whether an error of law was committed and whether necessary findings of fact are supported by substantial evidence."  *Morocho v. Workers' Comp. Appeal Bd. (Home Equity Renovations, Inc.)*, 167 A.3d 855, 858 n.4 (Pa. Cmwlth. 2017) (citing *Johnson v. Workmen's Comp. Appeal Bd. (Dubois Courier Express)*, 631 A.2d 693 (Pa. Cmwlth. 1993)).

> Substantial evidence is such relevant evidence a reasonable person might find sufficient to support the WCJ's findings.  In determining whether a finding of fact is supported by substantial evidence, this Court must consider the evidence as a whole, view the evidence in a light most favorable to the party who prevailed before the WCJ, and draw all reasonable inferences which are deducible from the evidence in favor of the prevailing party.

*Frog, Switch & Mfg. Co. v. Workers' Comp. Appeal Bd. (Johnson)*, 106 A.3d 202, 206 (Pa. Cmwlth. 2014) (internal quotations and citations omitted).

ceased. This burden can be met by presenting unequivocal and competent medical evidence of a claimant's full recovery from a work-related injury.[4] A determination of whether medical testimony is equivocal is a conclusion of law fully reviewable by this Court. Credibility of witnesses, however, is for the [WCJ] to evaluate and he or she may accept the testimony of one witness over that of another.

*Koszowski v. Workmen's Comp. Appeal Bd. (Greyhound Lines, Inc.)*, 595 A.2d 697, 699 (Pa. Cmwlth. 1991) (internal citations omitted).

Here, in support of the Termination Petition and UR Petitions, Employer presented the testimony of Dr. Kirkpatrick, a board-certified orthopedic surgeon with a subspecialty in hands and upper extremities. *See* F.F. 23-29. In the WCJ Decision, the WCJ provided an extensive and detailed summary of Dr. Kirkpatrick's testimony. *Id.* Notably, the WCJ stated that Dr. Kirkpatrick testified that he evaluated Claimant on July 10, 2017. F.F. 23. Dr. Kirkpatrick testified that Claimant provided a history of her hand injury, including her worsening bilateral hand tension with pain and numbness in approximately August 2014, and her two surgeries in October 2014 and November 2016.[5] *Id.* Dr. Kirkpatrick also explained that he reviewed Claimant's medical records and the Prior WCJ Decision. *Id.*

Regarding his evaluation, Dr. Kirkpatrick explained that Claimant lifted and carried objects normally with her left hand and arm, but that she hesitated

---

[4] "Medical evidence is considered unequivocal if the medical expert, after providing a foundation, testifies that in his medical opinion, he thinks the facts exist." *Craftsmen v. Workers' Comp. Appeal Bd. (Krouchick)*, 809 A.2d 434, 439 (Pa. Cmwlth. 2002).

[5] Dr. Kirkpatrick explained Claimant underwent a left endoscopic carpal tunnel release and trigger finger releases in her left thumb, index, and long fingers in October 2014 and underwent a right endoscopic carpal tunnel release and in situ right cubital tunnel release in November of 2016. F.F. 23.

4

to use her right arm as a result of described discomfort in her right wrist.  F.F. 24. Dr. Kirkpatrick testified that Claimant's shoulders exhibited full ranges of motion without abnormalities, as well as full ranges of motion in both elbows with unremarkable elbow examinations.  F.F. 24.  Dr. Kirkpatrick explained that Claimant exhibited no tenderness to palpation over the right cubital tunnel.  F.F. 24.  Dr. Kirkpatrick also testified that Claimant had full ranges of motion of the wrists and, although she exhibited some fullness over the right ulnar wrist with tenderness to palpation over the distal aspect of the extensor carpi ulnaris (ECU) tendon, Claimant displayed no ECU tendon subluxation or instability with stress of the distal radioulnar joint.  F.F. 25.  Dr. Kirkpatrick further explained that examination of Claimant's right wrist with regard to provocative tests of various anatomic components was otherwise normal.  F.F. 25.  Claimant had no tenderness to palpation over the various anatomic components on her left side, and provocative maneuvers on that side were unremarkable.  F.F. 25.

Regarding Claimant's hands, Dr. Kirkpatrick testified that Claimant displayed full motion of the finger joints of her hands and thumbs, no tenderness to palpation over the fingers or pulleys, and no muscle atrophy of the hands.  F.F. 25. Dr. Kirkpatrick testified Claimant did not demonstrate any trigger of any fingers: her muscle strength was normal and she pinched and opposed each thumb to each finger without difficulty.  F.F. 25.  Dr. Kirkpatrick further explained that Claimant had normal and intact sensation of both hands, and reported the lack of any numbness or tingling sensations in her fingers.  F.F. 26.  Dr. Kirkpatrick noted the Tinel's tests performed over the median nerves of the wrists and the median nerve compression test on both sides were negative, and that the hands were similar in color and warmth without dystrophic changes in either hand.  F.F. 26.  Dr. Kirkpatrick also testified

5

that he performed grip strength tests on Claimant and measured her key pinch and pulp pinch. F.F. 26.

Ultimately, Dr. Kirkpatrick testified that Claimant fully recovered from the accepted injuries of bilateral trigger fingers and thumbs and bilateral carpal tunnel syndrome. F.F. 27. Dr. Kirkpatrick further testified that he identified no pathology in the hands or wrists that suggested a lack of recovery, and that Claimant did not have any further triggers of the fingers of either hand and/or evidence of ongoing carpal tunnel symptomology. F.F. 27. Dr. Kirkpatrick also explained that recent electrodiagnostic studies have revealed no ongoing median neuropathy on either side. F.F. 27.

Based on the above, Dr. Kirkpatrick testified that Claimant did not need further medical treatment for her work injury and could have resumed her pre-injury job as of July 10, 2017. F.F. 28. Further, Dr. Kirkpatrick did not relate Claimant's right wrist complaints to her work injury or job. F.F. 28. Finally, Dr. Kirkpatrick testified that, while the recurrence of carpal tunnel syndrome is possible, recurrence of trigger fingers and trigger thumbs is not possible following surgical intervention to release those tunnels because the tunnels no longer exist after surgery. F.F. 29.

In opposition to the Termination Petition and UR Petitions, Claimant presented the testimony of Dr. Grossinger, a board-certified neurologist[6] who first saw Claimant on June 1, 2017. *See* F.F. 9-18. Dr. Grossinger testified that, on June 1, 2017, he took a patient history from Claimant that covered her work injury of August 2014 and subsequent treatment, specifically with respect to the development of Claimant's symptomology during the performance of her firearms qualification

---

[6] Dr. Grossinger does not perform orthopedic surgery, inclusive carpal tunnel surgery, or trigger finger release surgery. F.F. 9.

and gun use. F.F. 9. Dr. Grossinger testified that an electromyogram conducted on June 1, 2017 in response to Claimant's complaints of recurrent hand discomfort, numbness, and tingling sensation revealed a slowed conduction velocity across the ulnar groove without denervation in the muscles and no electrical features of carpal tunnel syndrome. F.F. 10. Dr. Grossinger also testified that his physical examination of Claimant on June 1, 2017 revealed: unremarkable motion of the neck and shoulders; some tenderness at the right elbow and medial epicondyle; a negative Tinel's sign along the course of the ulnar nerve and after its surgical movement or transposition at the elbow; tenderness at the dorsum of the right wrist; and increased tenderness with extension and restricted flexion of the left index finger and middle digits. F.F. 11. Dr. Grossinger explained that a second physical examination of Claimant conducted on June 22, 2017 yielded similar findings as the June 1, 2017 examination. F.F. 12. Dr. Grossinger noted that, at the June 22, 2017 examination, Claimant expressed ongoing complaints regarding tendonitis in her right wrist which Dr. Grossinger opined were the result of different injuries than those previously accepted as part of the work injury. *Id.* Dr. Grossinger explained that he prescribed a topical anti-inflammatory/pain cream and recommended Claimant consult a hand specialist. F.F. 13. Claimant returned to Dr. Grossinger's practice again on August 22, 2017 and November 7, 2017, at which time she reported complaints of continued discomfort in her right forearm and hand and her left hand, and aching, burning, and cramping of her elbows and pain in her hands and joints. *Id.*

Dr. Grossinger diagnosed Claimant with bilateral carpal tunnel syndrome, chronic strains of the wrists, and trigger fingers with the involvement of the thumb, index, and middle fingers. F.F. 14. Dr. Grossinger opined that Claimant

did not make a recovery from her work injury and further that Claimant cannot resume work without restrictions as a result of her work injury. *Id.* Despite this testimony, the WCJ noted that Dr. Grossinger did not specify which, if any, of his findings, specifically his finding of Claimant's tenderness at the right medial epicondyle, tenderness at the dorsum of Claimant's right wrist, and restriction in flexion of the left index and middle digits, were components of his diagnoses of Claimant's conditions, specifically bilateral carpal tunnel syndrome, chronic strains of the wrists, and trigger fingers with involvement of the thumb, index, and middle fingers.[7] *Id.* Dr. Grossinger ultimately concluded, in contrast to Dr. Kirkpatrick, that Claimant cannot resume her pre-injury work duties without restrictions because Claimant cannot shoot a gun as required without risk of injury. F.F. 15. Dr. Grossinger also testified that Claimant's prescribed medical treatment and office visits were reasonable medical treatment to attend to Claimant's pain and to assess the status of Claimant's injuries. F.F. 16-17. Finally, Dr. Grossinger disagreed with Dr. Kirkpatrick's opinions that Claimant had recovered from her work injury, that she was capable of returning to her pre-injury job, and that a post-operative recurrence of trigger digits was impossible following surgery. F.F. 18.

Claimant also presented the August 8, 2017 statement of Dr. Karakasis, in opposition to the Termination and UR Petitions. *See* F.F. 19-22. The statement established that, despite not treating Claimant for six months prior to his statement, Dr. Karakasis concluded that Claimant remained totally disabled regarding her pre-injury duties and could not handle a firearm with any degree of confidence or safety. F.F. 19. Dr. Karakasis's statement established that he disagreed with Dr.

_____

[7] The WCJ also noted that the Prior WCJ Decision did not include chronic strains of the wrist as part of the previously accepted work injury. F.F. 14.

8

Kirkpatrick's medical opinions and conclusions, arguing that Dr. Kirkpatrick's final opinion was misleading, deceptive, omitted facts, and was, in Dr. Karakasis's opinion, violative of Pennsylvania law. F.F. 19-20. The WCJ noted, however, that Dr. Karakasis's opinion was unsupported by Claimant's testimony and personal statement, and was contradicted by Dr. Kirkpatrick's credible testimony. F.F. 21-22.

In further opposition to the Termination and UR Petitions, Claimant also presented the November 1, 2017 UR report of David Sirkin, D.O., which discussed the reasonableness and necessity of Dr. Grossinger's treatment in relation to Claimant's work injury. *See* F.F. 30-34. The WCJ noted that Dr. Sirkin's report discussed Claimant's diagnosis and treatment by Dr. Grossinger's office and stated Dr. Sirkin's conclusion that such prior and continuing treatment was reasonable and necessary for treatment of Claimant's August 2014 work injury. F.F. 31-34. The WCJ also noted, however, that Dr. Sirkin's findings were in direct contrast to Dr. Kirkpatrick's credible testimony that Claimant had fully recovered from the August 2014 work injury. F.F. 33-34.

Additionally, Claimant presented the October 26, 2017 UR report of Eric Auslander, D.C., in opposition to the Termination Petition and UR Petitions. *See* F.F. 35-39. Dr. Auslander performed a record review to determine the reasonableness and necessity of Dr. Karakasis's treatment of Claimant from March 17, 2017 onward. F.F. 35. Dr. Auslander determined that Dr. Karakasis's office employed routine assessment tools and treatment techniques in treating Claimant's complaints, the use and frequency of which Dr. Auslander concluded were neither unreasonable nor unnecessary. F.F. 36-39. The WCJ again noted, however, that Dr.

Auslander's findings were in direct contrast to Dr. Kirkpatrick's credible testimony that Claimant had fully recovered from the August 2014 work injury. *Id.*

Claimant also testified on her own behalf before the WCJ. *See* F.F. 6-8. Claimant testified that she developed problems with her hands and wrists in the course of her work and training as a security guard for Employer. F.F. 6. Claimant explained that she underwent surgery on her left wrist on October 8, 2014. *Id.* Claimant explained that she underwent a second surgery on her right wrist and hand in November of 2015. *Id.* Claimant testified that she was able to resume work on August 7, 2017. *Id.* However, upon returning to work, Claimant explained that she experienced a recurrence of her previous problems, swollen and sore palms, and tingling and sticking sensations in her hands. *Id.* Claimant explained that she attended physical therapy after this second surgery and then began treating with Drs. Karakasis and Grossinger. *Id.* Claimant testified that, in her opinion, she has not recovered from her work injury because she continues to experience throbbing pain, awakes in the middle of the night, and cannot sleep through the night. *Id.* Claimant also testified that she believes she cannot continue working as a security guard without restrictions because she cannot fire a gun. *Id.* As with the doctors' testimony, the WCJ noted that Claimant's testimony about her work injury was in direct contrast to Dr. Kirkpatrick's credible testimony that Claimant had fully recovered from the August 2014 work injury. *Id.* Additionally, Claimant testified that Employer did not offer light-duty work, despite her request. F.F. 8.

Based on the testimony and evidence presented, the WCJ made the following relevant determinations:

> 5. . . . The Claimant is credible to an extent, particularly with respect to the experience of the Claimant's work injuries. Dr. Kirkpatrick is more credible and persuasive

than Drs. Grossinger, Karakasis, Sirkin, and Auslander for several reasons: 1.) Dr. Kirkpatrick, as a board certified orthopedic surgeon with a subspecialty in hands and upper extremities, has a greater expertise for the evaluation and determination of alleged injuries as those of the Claimant in contrast to neurologists Drs. Grossinger and chiropractors Karakasis and Auslander; 2.) Dr. Kirkpatrick performed a myriad of tests of the Claimant as opposed to Dr. Grossinger without the performance of the same tests as those by Dr. Kirkpatrick at the time of Dr. Grossinger's 2 examinations of the Claimant; 3.) Dr. Karakasis didn't specify the results of any of his examinations of the Claimant and tests of the Claimant during his evaluations of the Claimant and in support of the alleged continuation of the Claimant's conditions; 4.) Dr. Karakasis didn't specify the results of any examinations of any medical practitioner in support of his statements and position about the alleged continuation of the Claimant's conditions; 5.) Dr. Kirkpatrick thoroughly examined the Claimant, in contrast to Drs. Sirkin and Auslander with no evaluation of the Claimant and with just reviews of the medical records with respect to the Claimant; 6.) The results of the Claimant's most recent diagnostic test support Dr. Kirkpatrick's opinion about the Claimant's recovery from the work injury; and 7.) Dr. Kirkpatrick's testimony and statements established Dr. Kirkpatrick's review of a plethora of medical records with respect to the Claimant, as opposed to the testimony and statements of Drs. Grossinger and Karakasis, without a delineation of any reviewed records.

F.F. 5. The WCJ determines credibility and weight of evidence, and neither the Board nor this Court may overturn those determinations on appeal. *Koszowski*, 595 A.2d at 699; *see also Hawbaker v. Workers' Comp. Appeal Bd. (Kriner's Quality Roofing Servs. & Uninsured Employer Guar. Fund)*, 159 A.3d 61, 69 (Pa. Cmwlth.), *appeal denied*, 173 A.3d 252 (Pa. 2017) ("Neither the Board nor this Court may

11

reweigh the evidence or the WCJ's credibility determinations."). As a result of the WCJ's credibility determinations, which we must accept, as did the Board,[8] we find that substantial record evidence supports the WCJ's findings of fact. Specifically, Dr. Kirkpatrick's credible testimony supports the finding that Claimant had fully recovered from all aspects of her work-related injury as of July 10, 2017. *See* F.F. 23-29. Therefore, the WCJ properly terminated Claimant's compensation benefits from July 10, 2017 onward. *See* WCJ Decision at 12-13 & Order. We find no error in the Board's affirmance of the WCJ's decision regarding the Termination Petition.

Regarding the UR Petitions, we note that the grant of the Termination Petition ended Employer's liability for any treatment related to the work injury after the termination of benefits. *See Keystone Coal Mining Corp. v. Workers' Comp. Appeal Bd. (Fink)*, 896 A.2d 691, 695 (Pa. Cmwlth. 2006) ("employer's liability does not extend beyond the time when compensation benefits are terminated); *see also Bethlehem Steel Corp. v. Workmen's Comp. Appeal Bd. (Randall)*, 679 A.2d 765, 767 (Pa. 1996) (holding that an employer is not liable for medical expenses beyond the time when compensation benefits are terminated). This Court has noted that engaging in utilization review following a termination of benefits is a needless inquiry. *Bloom v. Workmen's Comp. Appeal Bd. (Keystone Pretzel Bakery)*, 677 A.2d 1314, 1318 (Pa. Cmwlth. 1996) ("any review of treatment concerning an injury found not causally related to the work-related injury appears to be a needless inquiry"). Therefore, because the WCJ and the Board required the payment of Claimant's medical expenses up to the termination date, no further inquiry is required, and the Board properly affirmed the WCJ's grant of the UR Petitions as of

---

[8] *See* Board Opinion at 6.

July 10, 2017. *See* WCJ Decision, Conclusion of Law 5 & Order; Board Opinion at 6-7.

For the reasons stated above, the Board's order is affirmed.


                          _____

CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Brenda Harris,                                           :
                              Petitioner                 :
                                                         :
              v.                                         :
                                                         :
Workers' Compensation Appeal Board                       :
(Allied Barton Security Services, LLC),    :    No. 554 C.D. 2019
                              Respondent                 :


O R D E R


AND NOW, this 3rd day of January, 2020, the May 3, 2019 order of the Workers' Compensation Appeal Board is AFFIRMED.


_____
CHRISTINE FIZZANO CANNON, Judge