IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Blythe,                          :
                    Petitioner          :
                                        :   No.  437 C.D. 2020
          v.                            :
                                        :   Submitted:  November 20, 2020
Workers' Compensation Appeal            :
Board (City of Chester),                :
                    Respondent          :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE J. ANDREW CROMPTON, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED: December 29, 2021


          Robert Blythe (Claimant) seeks review of the April 10, 2020 order of the
Workers' Compensation Appeal Board (WCAB), which affirmed the May 15, 2019
decision and order of the Workers' Compensation Judge (WCJ) to award the City of
Chester (City) the entitlement of a pension benefit offset credit.

**Factual and Procedural History**

          Claimant injured his right shoulder while employed as a police officer for
the City and was awarded total disability benefits at the rate of $845.00 per week as of
August 8, 2013.  On February 8, 2016, the City filed a petition for suspension alleging
that (1) as of November 30, 2015, Claimant had voluntarily withdrawn from the
workforce, and (2) it was entitled to a credit for pension benefits paid to Claimant but
funded by the City.  By decision circulated June 19, 2017, the WCJ denied the petition

for suspension.  The WCJ also denied the City's request for a credit for pension benefits because the City did not present sufficient evidence to establish its entitlement to a credit:

> This [WCJ] finds further that even if Claimant could be said to be retired, [the City's] evidence does not establish an entitlement to a suspension of Claimant's workers' compensation benefits.  [The City's witness, Dejuana] Mosley did not testify as an expert and did not adequately explain Exhibit D-4 so as to allow it to form the basis of any alteration in Claimant's benefits.  [Exhibit] D-4 has no authentication.  This [WCJ] has no idea who prepared it or what the figures purport to show.  This [WCJ] accepts that [Exhibit] D-3 shows that Claimant's pension . . . is $6,061.58 per month, but even if this [p]etition [for suspension] was granted and Claimant had voluntarily removed himself from the workforce, there is no evidence as to the proper credit.

(WCJ decision, June 19, 2017, Findings of Fact (F.F.) No. 12.)

The City appealed the decision to the WCAB, which (1) affirmed the denial of the petition for suspension and the denial of the credit, but (2) remanded the matter to the WCJ "to allow [the City] to submit substantial competent evidence which, if found to be credible, will establish the amount of its funding of [Claimant]'s pension benefit and support the assertion of a credit under section 204(a) of the [Act].[1]" (WCAB decision, May 16, 2018, at 8.)

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §71.  Section 204(a) of the Act, reads, in pertinent part:

> The severance benefits paid by the employer directly liable for the payment of compensation *and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe shall also be credited against the amount of the award* made under sections 108 [added by the Act of October 17, 1972, P.L. 930, 77 P.S. § 27.1] and 306 [77 P.S. §§ 511-517], except for benefits payable under section 306(c) [77 P.S. § 513]. The employe shall provide the insurer with proper authorization

**(Footnote continued on next page…)**

## The City's Expert

On remand, the City presented the testimony of its Deputy Controller, Dejuana Mosley (Mosley), who had previously testified in the underlying proceedings. The WCJ summarized Mosley's prior testimony relevant to the pension credit issue, as follows:

> a. Ms. Mosley is the Deputy Controller for the City of Chester and handles all issues related to the pension and internal controls for the City. She also handles the deferred retirement option program ("DROP"). Ms. Mosley explained in detail the provisions of the "DROP" program which is a retirement benefit offered to police and fire personnel. Claimant entered the DROP program on December 1, 2010, and his separation date would be five years later on November 30, 2015.
>
> b. Ms. Mosley testified that an employee contributes to a Pension Fund with payroll deductions. The City receives State Aid through Act 44[2] and then the City is responsible to make municipal minimal obligation annual contributions. The City, State and employee contribute. When an employee is in the DROP program, the State aid is still contributed through the plans, but they are deemed retired and are no longer making pension contributions. The City still receives State Aid but not for the person enrolled in the DROP program because they are no longer making pension contributions. When Claimant entered the DROP program, there was no longer any State aid for him, but he was still getting credit for what the City paid in for him. Once you go

to secure the amount which the employe is receiving under the Social Security Act.

77 P.S. §71 (emphasis added).

[2] Act of September 18, 2009, P.L. 396, No. 44 (commonly known as Act 44) amended the Municipal Pension Plan Funding Standard and Recovery Act, Act of December 18, 1984, P.L. 1005, No. 205, *as amended*, 53 P.S. §§895.101-895.1131 (commonly known as Act 205) by adding Chapter 11, titled "Deferred Retirement Option Plans." *See* Sections 1101-31 of Act 205, 53 P.S. §§895.1101-31.

3

into the DROP program your pension deduction automatically ceases. Once you enter the DROP program only Act 205 money and City money would be put in.

c. Ms. Mosley testified that [] the City of Chester offers a defined benefit plan and payment is based off of a contract or city ordinance obligation based on criteria which is usually set up by age and service years. Once an employee qualifies for obtaining years or age, the benefit is based off your calculations that are described in your contract or city ordinance. For police officers, once they reach retirement age or years the benefit is their last twelve months that they worked. The City contribution into the pension fund is a global contribution for all people that the City is paying for within the fund. In order to tell what contribution was made on behalf of Claimant, Ms. Mosley had to consult with consultants and the State Actuary.

d. Claimant separated from the DROP program on November 30, 2015 and he started receiving his actual pension and his DROP benefit in December of 2015. This means he has retired from the City of Chester. On cross examination, Ms. Mosley testified that as a DROP participant Claimant is receiving a weekly check from the City in his pension benefit that was calculated as being invested for him. The plan can determine the City's Municipal Minimum Obligation (MMO) payment from the year Claimant started working until he separated from the DROP program. The plan can determine what the City required to put in as well as the State Aid invested and the investment earnings. This would show whether or not the City made the MMO or overpaid it. Ms. Mosley testified that except for 2014, 2015 and 2016, the City has made [MMO] contributions although they were late. When the contributions are late, the City is charged seven and a half percent (7.5%) interest which is credited to the respective pension fund.

(WCJ decision, May 15, 2019, F.F. No. 8(a)-(d).)

4

On remand, the City also presented the testimony of Larry Brisman (Brisman), who was employed with the Beyer-Barber Company as a vice president and actuary. He has been an enrolled actuary since 1992. (Reproduced Record (R.R.) at 29a, 182a-84a.) He was responsible for close to 400 municipal pension plans. He explained that "we would run the evaluations of the pension plans every two years. It's my responsibility to review the results, help prepare reports that go to the municipalities to show them what their funded status is at the particular point in time. Also, what the required contribution is that needs to be made in order to satisfactorily fund the pension plan." (R.R. at 29a, 183a.)

Brisman was requested by the City, through its third-party administrator, Thomas Anderson & Associates, to review the pension plan with respect to the Claimant. Brisman reviewed an employee pension face sheet that provided Claimant's date of birth, salary, and monthly benefit as well as a list of the contributions that were made by Claimant, the City, and the Commonwealth of Pennsylvania. After review of the materials, Brisman prepared a letter to the third-party administrator detailing the calculation that was done in order to determine the City's contribution to Claimant's pension benefit. (R.R. at 29a, 188a, 191a, 212a-16a.)

Brisman explained how he performed the calculations. The calculations were based on Claimant's personal information such as date of birth, date of employment, and date of disability. Brisman then factored an interest rate assumption or real rate of return of 7½% per year, as that represented a long-term rate of return of the pension plan. Brisman explained that one must look at the asset allocation of the plan and "apply capital market assumptions to it to get a sense of what the long-term rate would be." (R.R. at 29a, 191a-94a.) The rate of interest/real rate of return of 7½% was within the average range of what municipalities use. *Id.*

5

Brisman further explained that to determine Claimant's contribution, he looked at the accumulated value of Claimant's contributions as of December 1, 2010. That amount was $75,157.00. The accumulated value was divided by an annuity factor which was determined from the 7½% interest and mortality table to obtain the annual benefit or contribution made by Claimant. Claimant's annual contribution was $5,822.66. (R.R. at 29a, 195a-96a.) Brisman explained that the remaining benefits in the amount of $66,916.30 were then attributable to either the Commonwealth or the City. Using the figures provided by the third-party administrator, Brisman determined that the accumulated contributions from the Commonwealth were $40,671,799 and the City were $13,222,520. Dividing the remaining amount of $66,916.30 by each of the accumulated contributions, he determined that the City's portion of the contributions was $21,754.70, which was 29% of the total annual benefit. Brisman determined that Claimant's portion was 8% and the Commonwealth's portion was 62% of the total figure. Brisman confirmed that even if the City did not make the MMO, the calculations accurately reflected only the years money was contributed. He explained that if the City made a late payment, it paid interest and the contribution to the pension fund was only considered in the year the contribution was made. (R.R. at 29a-30a, 196a-97a, 200a-01a, 213a-16a.)

Brisman explained in detail how he calculated the annual portion of benefits paid to the portion of the pension fund attributable to Claimant by the City to be $21,754.70 or 29% of the total figure. Claimant provided no rebuttal evidence to show there was no entitlement to a credit and did not provide any documents or calculations that differed from the documents and Brisman's testimony regarding the City's credit. (R.R. at 30a.)

6

## WCJ Decision

By decision dated May 15, 2019, the WCJ granted the City's suspension petition and awarded the City a 29% credit against Claimant's ongoing temporary total disability benefits from December 25, 2015, and ongoing, as long as the Claimant continued to receive both workers' compensation benefits and his pension benefits. (WCJ decision, May 15, 2019, F.F. No. 13.) The WCJ found that the City was entitled to an additional credit of 20% against Claimant's temporary total disability benefits until the City had recouped the credit that it was owed from December 25, 2015, until the date that the City took its credit. *Id.* F.F. No. 14. In Finding of Fact No. 11, the WCJ found the testimony of the City's witnesses, Mosley and Brisman, credible and persuasive. The WCJ noted that Claimant failed to provide rebuttal evidence to show that the City was not entitled to a pension offset credit or provide any documents or calculations that differed from the documents provided by the City's experts.

Claimant appealed to the WCAB, arguing that (1) the City waived its right to present evidence to establish its entitlement to a credit, and that the WCAB erred by ordering a remand; and (2) the evidence was not sufficient to establish the amounts contributed by the City and Claimant to permit the appropriate calculations under the Act – specifically, because the actuarial evidence accepted as credible by the WCJ included contributions from the Commonwealth, which was not his employer, and because the City did not address pension underfunding.

## WCAB Opinion

On April 10, 2020, the WCAB circulated an opinion affirming the WCJ's decision. With regard to the issue of waiver and whether the WCAB erred in remanding the matter to allow the City to present additional evidence, the WCAB held that no error had occurred. It reasoned that section 204(a) of the Act requires that

employer-funded contributions to a claimant's benefits under a pension plan *must* be credited against a workers' compensation award. 77 P.S. §71(a). It concluded that because the language of section 204(a) is mandatory, a remand was not improper.

Regarding the pension benefit offset credit, the WCAB rejected Claimant's argument that the City failed to establish the extent of its funding of Claimant's pension benefits. The WCAB did not agree with Claimant that Brisman's testimony was deficient. The WCAB concluded that Brisman calculated the separate contributions by Claimant, the City, and the Commonwealth, and that he did not evade questions concerning MMO payments and that he explained that late payments are included in the year they were actually made.

## Issues and Analysis

In his petition for review,[3] Claimant raises two issues: (1) whether the WCAB erred in remanding the case to the WCJ to allow the City to submit additional evidence on the pension benefit offset credit; and (2) whether the WCAB erred by concluding that the City met its burden of proving its entitlement to a pension benefit offset credit.

## 1.

In his first issue, Claimant argues that the WCAB erred by remanding this matter to the WCJ for further evidence, and the WCJ's acceptance of additional evidence was error. He submits that a failure to present evidence to establish the entitlement to specific relief is fatal to a petition in workers' compensation matters. (Claimant's Br. at 10 (citing *Romaine v. Workers' Compensation Appeal Board (Bryn*

---

[3] This Court's scope of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Schriver v. Workers' Compensation Appeal Board (Department of Transportation)*, 699 A.2d 1341 (Pa. Cmwlth. 1997).

*Mawr Chateau Nursing Home*), 901 A.2d 477 (Pa. 2006)).) He contends that in the original proceedings before the WCJ, the City chose not to present expert testimony and that was fatal to its request for a credit for pension benefits. (Claimant's Br. at 9-14 (citing *Commonwealth v. Workers' Compensation Appeal Board (Harvey)*, 993 A.2d 270 (Pa. 2010), and other cases for proposition that actuarial expert testimony is required to establish entitlement to a pension offset when there is a defined pension plan).) He asserts that the WCAB found that the City had failed to present substantial competent evidence to establish its entitlement to a credit. In Claimant's view, that should have ended the WCAB's inquiry. He argues that the purpose of a remand is not to allow a party to present evidence it failed to present previously.

We discern no error in the WCAB's remand to permit the City to provide substantial competent evidence to establish how much it contributed to the pension. The WCAB has broad discretionary authority under section 419 of the Act, added by the Act of June 26, 1919, P.L. 642, 77 P.S. §852, to remand to a WCJ. Section 419 of the Act provides:

> The [WCAB] may remand any case involving any question of fact arising under any appeal to a [WCJ] to hear evidence and report to the [WCAB] testimony taken before him or such testimony and findings of fact thereon as the [WCAB] may order. . . .

77 P.S. §852. *See also McDaniel v. Workers' Compensation Appeal Board (Maramont Corporation)*, 157 A.3d 544, 548 (Pa. Cmwlth. 2016). Section 204(a) of the Act provides that the benefits of a pension plan, to the extent funded by the employer directly liable for the payment of compensation, *shall* be credited against a workers' compensation award. 77 P.S. §71(a) (emphasis added). The purpose of section 204(a) of the Act is to reduce the cost of workers' compensation benefits in Pennsylvania by allowing employers to avoid paying duplicate benefits for the same loss of earnings.

9

*Kramer v. Workers' Compensation Appeal Board (Rite Aid Corporation)*, 883 A.2d 518, 536 (Pa. 2005); *Harvey*, 993 A.2d at 281 (citing *Kramer* and noting the Legislature's clear intention in enacting section 204(a) was "to afford effective redress"); *Pennsylvania State University v. Workers' Compensation Appeal Board (Hensal)*, 911 A.2d 255 (Pa. Cmwlth. 2005). Here, the City presented evidence in the original proceedings before the WCJ that the City had definitely contributed funds to Claimant's pension. In light of the clear legislative intent to provide employers relief from concurrent payment of workers' compensation and employer-funded pension benefits, we cannot say the WCAB erred in requiring the WCJ to take evidence and to make findings on a crucial issue necessary for the proper application of the law. *See Craftsmen v. Workers' Compensation Appeal Board (Krouchick)*, 809 A.2d 434 (Pa. Cmwlth. 2002) (upholding WCAB's remand pursuant to section 419 of the Act where the WCAB was convinced that additional findings were needed on the issue of causation, for proper application of the law surrounding the claimant's burden of proof in a cardiac death case). Because the language of section 204(a) is mandatory, we conclude that the WCAB correctly held that a remand to the WCJ was proper. 77 P.S §71(a).

**2.**

Next, Claimant argues that, under section 204(a) of the Act, an employer is only entitled to offset workers' compensation disability benefits from a pension plan "to the extent funded by the employer directly liable for the payment of compensation." 77 P.S §71(a). Referring to the WCJ's Finding of Fact No. 8(3) ("[t]he remaining benefits were then attributable to either the Commonwealth or [the City]"), Claimant argues that the City's evidence did not reflect its actual contributions because Brisman intermingled the City's contributions with those of the Commonwealth. He contends

10

that because the offset calculations included the Commonwealth, not Claimant's actual employer, the City's evidence was hypothetical and did not represent its actual contributions. We disagree with Claimant's assessment.

Under section 204(a) of the Act, 77 P.S. §71(a), the employer bears the burden to establish the extent of its funding of the claimant's pension benefits. *Department of Public Welfare/Polk Center v. Workers' Compensation Appeal Board (King)*, 884 A.2d 343, 347 (Pa. Cmwlth. 2005). Actuarial assumptions and calculations may be used to determine the employer-funded component of a defined benefit pension plan. *Harvey*, 993 A.2d at 281-82. The Act does not require the employer to prove the amount of its *actual* contributions. *Id*.

Based on the record, we conclude that the City's evidence, as accepted by the WCJ, meets this standard. The City presented unrebutted evidence that it contributed $21,754.70 to Claimant's annual pension benefits that he received in addition to his workers' compensation benefits.[4] The WCJ credited the testimony of Mosley, the City's Deputy Controller, which was taken in the original proceeding. The WCJ also found Brisman's testimony credible, observing that Brisman explained his calculations in detail and that Claimant did not present rebuttal evidence to show that there is no entitlement to a credit, or provide differing calculations. We do not agree that Brisman's testimony was deficient in the manner argued by Claimant. Claimant fails to take into consideration the remainder of Brisman's testimony. Specifically, Brisman explained that the accumulated value of Claimant's contributions as of December 1, 2010, was $75,157.00. That sum was divided by an annuity factor of 12.907684, yielding an annual benefit of $5,822.66 attributable to Claimant's

---

[4] In his brief, Claimant cites to a "Report on Municipal Pension Funds" and an article titled "State: Chester's pension fund is going broke." However, because this "evidence" was never submitted to the WCJ during the underlying litigation or on remand, we will not consider it on appeal.

11

contributions. Although Brisman noted that the remaining benefit of $66,916.30 was attributable to the Commonwealth aid and the City's contributions, he went on to calculate the total of the combined contributions of Claimant, the Commonwealth and the City. Precisely, the remaining benefit was multiplied by a ratio of the City's accumulated contributions to the total of the combined Commonwealth and the City's contributions. The same calculations were used to determine the Commonwealth aid amount. The portion of Claimant's benefit attributable to his contribution was determined to be 8% of the total; the Commonwealth's contribution was determined to be 62.1% of the total; and the City's portion was determined to be 29.9% of the total. (WCJ decision, May 15, 2019, F.F. No 8(c).)

The WCJ has complete authority over questions of credibility, conflicting evidence and evidentiary weight. *Daniels v. Workers' Compensation Appeal Board (Tristate Transportation)*, 828 A.2d 1043, 1052 (Pa. 2003). The WCJ is free to accept or reject, in whole or in part, the testimony of any witness. *Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.)*, 698 A.2d 1378 (Pa. Cmwlth. 1997).

Because an employer may sustain its burden of proof for offset purposes through expert actuarial opinion, and the WCJ here found the City's offer of this evidence credible, the City is entitled to an offset. *City of Philadelphia v. Workers' Compensation Appeal Board (Grevy)*, 968 A.2d 830, 839 (Pa. Cmwlth. 2009) (explaining that, "[i]f the actuarial testimony is accepted as credible, it is legally sufficient to establish the extent of an employer's funding for offset/credit purposes").

The order of the WCAB is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge

12

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Blythe, :
          Petitioner :
  :  No.  437 C.D. 2020
  :
      v. :
  :
Workers' Compensation Appeal :
Board (City of Chester), :
          Respondent :

## *ORDER*

AND NOW, this 29th day of December, 2021, the April 10, 2020 opinion and order of the Workers' Compensation Appeal Board is hereby AFFIRMED.

 

_____
PATRICIA A. McCULLOUGH, Judge